A02A2047. CARTER v. THE STATE.
(578 SE2d 508)

RUFFIN, Presiding Judge.

A jury found Anthony J. Carter guilty of violating several Fayette County ordinances and a stop work order during construction he performed on his property in the county. Carter appealed, pro se, asserting that the evidence produced at trial was insufficient to support the verdict, that he was given an excessive sentence, and that the trial judge erred in denying his motion for recusal. Finding the evidence sufficient and no reversible error, we affirm.

1. In reviewing the sufficiency of the evidence, we view that evidence in a light most favorable to support the jury's verdict, and we

will uphold the verdict if a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.[1] Viewed in this manner, the evidence at trial shows that on August 31, 2001, Fayette County issued Carter a building permit to "move" a prefabricated residence onto a 12.35-acre parcel of land he owned. The charges against Carter arose out of construction he performed on the property in violation of county ordinances and a stop work order.

(a) One of the ordinance violations concerned Carter's installation of used materials in constructing a water supply line for his home. The evidence shows that, after the home was moved to the site, Carter installed a water supply line and contacted the county to inspect the line. The inspector, William Cushing, discovered that Carter had constructed the line with used PVC pipe and corroded metal couplings with mismatched threads. Before approving the water supply line, Cushing went back to his office to research whether Carter was authorized to use such materials. When Cushing returned to the site the following day, the line was buried. Cushing left Carter a notice that the line was rejected due to the used pipe and provided him with excerpts of the Standard Plumbing Code, which further explained the deficiencies. Cushing was never called back to reinspect the line.

The Georgia Standard Plumbing Code, which was adopted by the county and generally prohibits the reuse of materials, provides: "[m]aterials, equipment, and devices shall not be reused unless such elements have been reconditioned, tested, placed in good and proper working condition, and approved."[2] In this case, even if Carter had reconditioned and tested the pipes and couplings — and it does not appear that he did — there is no evidence that the county approved his use of the materials. Indeed, the evidence shows that the county inspector rejected Carter's use of the materials. Thus, the evidence was sufficient to establish that Carter violated the ordinance.

(b) A second ordinance violation concerned Carter's installation of his sewage disposal system. The county had issued Carter a permit for a septic system, but required him to install the tank at a specific location. Evidently, Carter installed a system but buried it before it was inspected. A county health department inspector, Richard Fehr, discovered "evidence of gravel and pipe and other components of a septic system installation and disturbance of soil in an area where

---

[1] See *Morgan v. State*, 255 Ga. App. 58 (564 SE2d 467) (2002).

[2] Ga. Standard Plumbing Code § 303.2.1 (2001), adopted by Fayette County, Ga. Code of Ordinances § 5-111. Although Carter argues that reuse of piping is permitted by the International Plumbing Code, he has not shown that this Code has been adopted in Georgia. Furthermore, the issue is not whether the reuse of piping is allowed, but whether Carter met the prerequisites for reusing the pipe.

[Carter] originally indicated that [he wanted] to have a system." And, in his brief on appeal, Carter acknowledges that he installed a septic tank, a 25-foot drain field, and a "functional temporary toilet."

Under the Fayette County Code, it is unlawful to bury or use a septic system before the county conducts a final inspection.[3] As discussed above, the evidence produced at trial shows that Carter installed and buried his septic system without first having it inspected. Furthermore, Carter's acknowledgment that he installed the system and a functional toilet " ' "is a solemn admission in judicio. As such, it is binding upon [Carter] and estops [him] from denying the admission or introducing any evidence to controvert the admission." ' "[4] It follows that there was sufficient evidence to support Carter's conviction on this count.

(c) A third violation concerned excavation work that Carter performed without a land disturbance permit. The evidence shows that the county engineering department had received numerous complaints that Carter was clearing land on and near a county right-of-way, causing water to back up onto the right-of-way and a neighbor's property. An engineering department employee who investigated the matter confirmed the validity of the complaints and testified that the excavation was of a "large magnitude" and outside the immediate area of the home site. Another department employee found that Carter excavated a trail along his property line, "some sort of trench in the direct rear of the house that extends out for a couple hundred feet" and a ditch by the right-of-way that was apparently designed to "divert the natural flow of water around to . . . where Mr. Carter [had] put his unapproved drain field." Carter never obtained a land disturbance permit for this activity.

The Fayette County development regulations require a landowner to obtain a land disturbance permit before performing any land disturbing activity.[5] These regulations provide an exemption for "[t]he construction of single-family residences, when such are constructed by or under contract with the owner for his or her own occupancy."[6] Carter relies on this exemption in asserting his innocence here. But, as stated above, the exemption applies only to construction of a residence, and the evidence reveals that Carter's land disturbing activity was not limited to the actual construction of his residence.[7] The evidence also belies Carter's argument that he was exempt from

---

[3] See Fayette County, Ga. Code of Ordinances § 290-5-26.03 (5) (1992).
[4] *Froelich v. State*, 210 Ga. App. 647, 648, n. 1 (437 SE2d 358) (1993).
[5] See Fayette County, Ga. Code of Ordinances § 8-251 (a).
[6] Id. at § 8-243 (4) (a).
[7] The State acknowledges that Carter was authorized to excavate the land in the immediate location of the home site.

the regulations because the project involved "one and one-tenth acres or less."[8] Carter's lot is 12.35 acres, and it appears that he was performing excavation throughout the property. Finally, although Carter had permission from the Department of Public Works to install a "driveway pipe," he was expressly prohibited from working "on the road right of way, . . . digging new ditches or filing [sic] low areas[, and] damming up a ditch on private property which backs water up onto the county's road right of way." He clearly violated these prohibitions in this case. Accordingly, the evidence was sufficient for the jury to find Carter guilty of violating the land disturbance ordinance.

(d) Due to Carter's unauthorized land disturbance activity, an employee with the county's engineering department issued a stop work order on February 1, 2002, requiring Carter to cease all construction on the property.[9] According to the employee, the stop work order directed Carter "to stop work completely and to call us" and informed Carter that he could not continue excavating without a land disturbance permit. That same day, Sergeant Earl Williams served Carter with citations for violating the ordinances discussed above, including one for "[g]rading without a Land Disturbance Permit." When he served the citations, Williams explained to Carter "that he would have to present the engineering department with a plan on how he was going to go ahead with the soil disturbance . . . before the [stop] work order would be lifted."

Notwithstanding the citations, Sergeant Williams' admonition, and the stop work order, Carter continued excavating the property without obtaining a land disturbance permit. And, based on this conduct, the State charged Carter with two violations of the stop work order: one for work he performed between February 1, 2002, and February 13, 2002; and another for work he performed between February 15, 2002, and February 22, 2002.[10] The evidence shows that Sergeant Williams saw Carter on earth moving equipment excavating his property on three occasions during the periods covered by both charges. According to Williams, "Carter continued to work on the upper end of the house, behind the house. He would take the dirt from behind the house . . . to make a dam up front by the roadway." Likewise, one of Carter's neighbors testified that he saw Carter using

---

[8] See Fayette County, Ga. Code of Ordinances § 8-243 (7).

[9] Although the record does not contain a copy of this stop work order, a copy of the county's standard order was admitted into evidence, and testimony shows Carter was served with a "substantially similar" order.

[10] It appears that the State added the second charge because Carter continued to violate the stop work order after the initial accusation was filed. In fact, after the second accusation was filed, Carter allegedly continued his unlawful conduct and was cited for additional violations.

a backhoe to dig a trench near the road after the order was issued. Another neighbor observed Carter moving dirt with a backhoe on "multiple days" during the periods covered by both charges.

This evidence establishes that during the relevant periods, Carter violated the stop work order. The county Code requires that, after being served with a stop work order, an individual must "immediately" cease work being done in violation of the Code "until the necessary corrective action or mitigation has occurred."[11] Although Carter asserts that the order in this case failed to inform him of the required remedial action, there is ample evidence that Carter was repeatedly told that he needed to obtain a permit before recommencing work.

For the reasons discussed above, we conclude that the evidence was sufficient to enable any rational trier of fact to find Carter guilty beyond a reasonable doubt of violating the county ordinances and the stop work order.[12]

2. We also conclude that the trial court properly sentenced Carter. The record shows that the court imposed a $1,000 fine and sixty days incarceration for each of Carter's five ordinance violations. These sentences are within the limits authorized for violations of county ordinances.[13] Accordingly, we find no error.

3. Finally, we find no merit in Carter's assertion that the trial judge erred in denying his motion for recusal. The record reveals that Carter filed two written motions for recusal, each time arguing that recusal was required because the trial judge was a defendant in a federal civil action. As the appellant, Carter bears the burden of showing error affirmatively by the record.[14] Here, Carter has pointed to no evidence in the record supporting his assertion and he has not explained why the federal civil action necessitated the judge's recusal. Thus, Carter presents no basis for reversal. Similarly, although Carter raises additional grounds for recusal in his appellate brief, he has not shown that he raised these grounds below or pointed to any evidence supporting them. It is well settled that this Court will not address issues raised for the first time on appeal.[15] Accordingly, this enumeration of error presents nothing for us to review.[16]

*Judgment affirmed. Barnes and Adams, JJ., concur.*

---

[11] Fayette County, Ga. Code of Ordinances § 8-259.

[12] See *Morton v. State*, 206 Ga. App. 413, 415 (2) (425 SE2d 336) (1992).

[13] See OCGA § 15-10-60 (a); Fayette County, Ga. Code of Ordinances § 1-8; *Morton,* supra at 415-416.

[14] See *Williams v. State*, 253 Ga. App. 10 (557 SE2d 473) (2001).

[15] See *Smart v. State*, 253 Ga. App. 649, 655 (9) (560 SE2d 92) (2002).

[16] See *Schwindler v. State*, 254 Ga. App. 579, 590-591 (17) (563 SE2d 154) (2002).

DECIDED FEBRUARY 21, 2003.

Anthony J. Carter, *pro se.*
Steven L. Harris, Solicitor-General, Lloyd W. Walker, for appel-
lee.