**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 11, 2026

# In the Court of Appeals of Georgia

A26A0690. WILKERSON v. STATE.

PIPKIN, Judge.

Shaquez Wilkerson pleaded guilty to speeding, see OCGA § 40-6-181; he now appeals. As explained below, Appellant has failed to demonstrate error on appeal; consequently, the judgment of the trial court is affirmed.

Appellant was issued a Uniform Traffic Citation ("UTC") alleging that he was traveling 69 miles per hour in a 45-miles-per-hour zone. Appellant subsequently pleaded not guilty and filed a litany of motions, including a request for discovery, a demand for a speedy trial, a motion to dismiss, and a general demurrer. The motion to dismiss and the general demurrer were both premised on the same argument, namely, that the UTC failed to reflect whether the relevant speed detection device --

a "LIDAR device" -- had been properly tested. The trial court denied the general demurrer, concluding that the UTC alleged all the essential elements of the relevant offense. Appellant then moved to "recuse/disqualify" the assigned judge, arguing that she had exhibited a "pattern of intentional[ly] subverting the law." The trial court denied the motion, determining that it was "legally deficient on its face." Appellant thereafter filed a second recusal motion, along with an accompanying affidavit. This motion, too, was denied; the assigned judge again concluded that Appellant's motion was facially insufficient, noting that Appellant's affidavit failed to show any specific instances of "'extra-judicial conduct or statements' showing bias or prejudice toward [Appellant] or a 'systemic pattern of prejudicial conduct.'"

Appellant thereafter entered an *Alford*[1] plea of guilty to the charged offense. In connection with his plea, Appellant completed a form entitled "Defendant's Plea Statement -- Unrepresented Traffic Cases," in which he acknowledged his intent to plead guilty and acknowledged that his guilty plea waived various constitutional rights. After his plea, Appellant filed a motion for new trial asserting that his right to due process had been violated by the State's "failure to provide all requested discovery

---

[1] *North Carolina v. Alford*, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

material" and that his plea was the result of prosecutorial coercion. Following a hearing on the motion, at which Appellant did not appear, his motion was denied. This appeal follows.

In the first two of his seven enumerations of error, Appellant asserts that the trial court erred in denying his general demurrer. More specifically, Appellant argues that OCGA § 40-14-5 -- which requires that a "radar" speed detection device be tested for accuracy and that such result be maintained by the testing authority, see OCGA § 40-14-5 (a) -- creates "statutory prerequisites [that] become an essential component of the offense where the State elects to rely on [such a] device." Thus, Appellant contends, the UTC in this case was insufficient because it did not properly reflect such testing. There is no merit to these enumerations.

As an initial matter, the plain language of OCGA § 40-14-5 applies to speed detection devices using radar; here, by his own admission, Appellant's speed was detected by a *laser* device called a LIDAR. It is not at all clear that OCGA § 40-15-5 applies to such devices. See *Brown v. State*, 351 Ga. App. 808, 809(2) & n.1 (833 SE2d 302) (2019). Compare OCGA § 40-14-17 (discussing laser speed detection devices). Moreover, Appellant has failed to cite any authority -- and we have found none --

indicating that a charging document is insufficient as a matter of law merely because it fails to reflect that the relevant speed detection device has been tested in accordance with the statute. Indeed, our case law reflects that, generally speaking, statutory testing requirements for speed detection devices concern the admissibility of such evidence not the required content for a charging document like a UTC. See, e.g., *Wiggins v. State*, 249 Ga. 302, 306(3) (290 SE2d 427) (1982) ("Evidence of speed gained by a state patrolman by use of a radar speed detection device is admissible only if the state introduces evidence establishing its compliance with each of the conditions of admissibility imposed upon such evidence by the General Assembly." (emphasis omitted)).

In his third enumeration of error, Appellant asserts that the trial judge's failure to recuse herself violated Appellant's due process rights. In support of this claim, Appellant points out that the trial judge "served as Chief Assistant District Attorney in Hall County for two decades" and argues that this "longstanding allegiance to the local prosecutorial community" could create "the objective appearance of partiality." He also complains that the trial judge failed to act when he reported that "the Solicitor's Office threatened him with incarceration if he declined [to agree] to a

4

plea." However, while Appellant twice moved the trial judge to recuse herself, Appellant did not raise these specific arguments below; further, Appellant points to no record evidence supporting either claim. Consequently, this argument offers nothing for this Court to review. See *Carter v. State*, 259 Ga. App. 798, 802(3) (578 SE2d 508) (2003) ("[A]lthough [the appellant] raises additional grounds for recusal in his appellate brief, he has not shown that he raised these grounds below or pointed to any evidence supporting them. It is well settled that this Court will not address issues raised for the first time on appeal.").

In his fourth enumeration of error, Appellant asserts that his due process rights were violated because "more than ninety days elapsed" between when he filed his motion for new trial and when the trial court ruled on the motion. However, this argument was not raised below, and we will not consider it for the first time on appeal. See *Chernowski v. State*, 330 Ga. App. 702, 707(1) (769 SE2d 126) (2015). In his fifth enumeration of error, Appellant contends that the State violated OCGA 17-16-23[2] and

---

[2] OCGA § 17-16-23 generally defines the term "written scientific reports," it establishes that a criminal defendant is entitled to have "a complete copy of any written scientific report[] in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution in its case-in-chief or in rebuttal," and provides for the exclusion and suppression of such a report if it is not properly turned over to the defendant.

*Brady v. Maryland*, 373 U. S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963), by failing to produce "calibration logs, [] accuracy-test documentation, [or] [] recorded results." While a similar argument was raised in Appellant's motion for new trial, he did not appear for that hearing or present evidence in support of that claim. Indeed, Appellant points to no evidence that could support his position -- and we have found none -- leaving this Court with nothing to evaluate these claims. Because Appellant has not demonstrated error from the appellate record before this Court, he is not entitled to relief. See, e.g, *Hornbuckle v. State*, 300 Ga. 750, 753(2) (797 SE2d 113) (2017) ("The appellant bears the burden of proving error by the appellate record." (citation modified)).

In his sixth enumeration of error, Appellant complains that the trial court denied his motion for new trial with an "undeveloped record" and without the benefit of an "evidentiary proceeding[] necessary" to create a sufficient record. However, as is plain from the record -- and as Appellant recognizes on appeal -- he failed to appear at the hearing on his motion. Under such circumstances, Appellant "waive[d] his right to a hearing and the opportunity to expand the record," and the trial court was authorized to rule on "the merits of [Appellant's] motion for new trial ... based on the

existing record." *Murray v. State*, 312 Ga. 863, 868-69(2)(b) (866 SE2d 385) (2021). As such, there is no merit to this enumeration of error.

Finally, Appellant asserts in his seventh enumeration of error that his plea was involuntary because "it was entered under coercion and in a structurally biased setting." Specifically, Appellant contends that "[t]he prosecutor threatened [him] with incarceration if he declined the plea offer" and that, given the trial judge's career as a former prosecutor, there was a "probability of bias" against him. However, "a guilty plea is valid as a matter of federal constitutional law if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." *Green v. State*, 318 Ga. 610, 636(II)(C) (898 SE2d 500) (2024).

Here, while Appellant claims that he was threatened by the prosecutor with incarceration, the record is clear that Appellant was advised by the trial judge that any possible sentence was ultimately decided by the court; on top of that, Appellant was expressly advised by the trial judge that she had "never put anybody in jail on a speeding ticket in two years" and, also, that incarceration was not part of the sentence being recommended by the State. Additionally, the plea transcript shows that, prior to the entry of his *Alford* plea, the trial court engaged in a lengthy discussion with

Appellant to ensure that he wanted to enter a plea of guilty. Along with the trial court's lengthy discussion with Appellant about how he wanted to handle the traffic offense, the trial court also engaged in a plea colloquy with Appellant on the record, and Appellant signed a plea form acknowledging his rights and intent to plead guilty. In light of these circumstances, there is no merit to Appellant's contention that his plea was involuntary. See, e.g., *Williams v. State*, 323 Ga. 362, 370(1) (925 SE2d 526) (2026) ("Thus, although [the appellant] may have been hesitant to enter a guilty plea, the record shows that, under the totality of the circumstances, his plea was intelligently and voluntarily entered.").

For these reasons, the judgment of conviction is affirmed.

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur.*