## S04A0587. TUFF v. THE STATE.
### (597 SE2d 328)

SEARS, Presiding Justice.

Appellant John Henry Tuff appeals his convictions for murder and related crimes, resulting in a life sentence.[1] Appellant urges that the trial court committed numerous errors and asks that his convictions be reversed. Having reviewed the record, we conclude that appellant's contentions are without merit, and we affirm.

Evidence of record shows that one evening in June 2002, police were called to a Houston County liquor store because witnesses reported that appellant was struggling with his wife, Ophelia Howard, in a phone booth. Witnesses reported that appellant struck Howard, causing her to collapse. Later that same evening, officers were dispatched to the apartment of Howard's sister, Nottingham, due to an argument that occurred there between Howard and appellant. Howard told police that appellant had struck her. Still later that night, appellant burst through the door of Nottingham's apartment and saw Howard run into the bedroom, locking the door behind her. Appellant broke the door down and shot Howard in the head, killing her. When Nottingham attempted to telephone police, appellant kicked the phone away and shot her, too, wounding her before fleeing the scene. When the police arrived, Nottingham identified appellant as the shooter. The police went to appellant's house and placed him in custody. An officer conducted a gunshot residue test on appellant's hands that showed he had recently fired a gun. Subsequent testing confirmed that appellant's shoes were stained with Nottingham's blood.

---

[1] The crimes occurred on June 8, 2002, and appellant was indicted on June 25, 2002. Trial was held from March 17-20, 2003, and appellant was convicted on all counts. He was sentenced to life in prison for malice murder; to twenty consecutive years for aggravated battery; to twenty consecutive years for burglary; to five years – to be served consecutively to the life sentence and concurrently with the other sentences – for illegal firearm possession; and to five consecutive years for being a felon in possession of a firearm. A conviction for felony murder was treated as surplusage and a conviction for aggravated assault merged as a matter of fact into the malice murder conviction. Appellant's new trial motion was filed on March 24, 2003, and amended on August 11, 2003. The motion was denied on August 13, 2003. The notice of appeal was timely filed on August 18, 2003. The record was certified on December 2, 2003, the appeal was docketed on December 10, 2003, and submitted for decision on briefs.

1. Construed most favorably to the verdicts, the evidence of record was sufficient to enable rational triers of fact to find appellant guilty of the crimes for which he was convicted.[2]

2. The trial court did not err in admitting evidence of prior difficulties between appellant and the victim. At trial, six witnesses testified that on the day of the murder, appellant struck the victim. Witnesses Shabazz and Johnson both testified that on the day of the murder, they observed appellant strike a woman in front of a liquor store. Witnesses Nottingham and King, as well as Sophia and Stephanie Howard (the victim's daughters), each testified that the victim had told them that on the day of the murder, appellant had struck her in the head with a gun. In addition, witnesses Nottingham and King also testified that the victim had told them that on the day of the murder, appellant had threatened to kill her.

Evidence of prior difficulties between a defendant and a victim is generally admissible when the crime charged was perpetrated against the victim and the evidence demonstrates: (1) the relationship between the defendant and victim, and (2) the defendant's motive, intent or bent of mind.[3] As with any evidence, evidence of prior difficulties may not be unduly prejudicial, remote or confusing to the jury, but we perceive none of these defects here. The testimony concerning appellant's threats and specific acts of violence against the victim on the day of the murder was highly relevant with regard to his then-present intention to seriously harm her and his abusive bent of mind toward her. In addition, the testimony most certainly demonstrated the state of the relationship between appellant and the victim. Although the testimony about prior difficulties may have incidentally placed appellant's character in issue, that factor, standing alone, did not render it inadmissible.[4]

Furthermore, the testimony of Nottingham, King, and Sophia and Stephanie Howard regarding the victim's statements on the day of the murder was properly admitted under the necessity exception to the rule against hearsay evidence.[5] For hearsay to be admitted under the necessity exception, the proponent must establish that the testimony is necessary, that there are particular guarantees of trustworthiness connected to the declarant's statements, and that the hearsay statements are more probative and revealing than other available

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998).

[4] *Wall*, 269 Ga. at 508, n. 3.

[5] *Myers v. State*, 275 Ga. 709, 712 (572 SE2d 606) (2002) (where testimony concerning prior difficulties is hearsay, it is not admissible unless it meets an exception to the rule against the admission of hearsay).

evidence.[6] Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion, and the trial court's decision will only be disturbed on appeal for an abuse of such discretion.[7] The trial court does not abuse its discretion when it uses the necessity exception to admit hearsay testimony that relates an uncontradicted statement made by an unavailable witness to one in whom the declarant placed great confidence and to whom the declarant turned for help with problems.[8]

At trial, the victim's hearsay statements were necessary, as she was deceased.[9] Moreover, the statements were the most probative and revealing evidence regarding both the assault in which appellant hit the victim in the head with a gun and appellant's threats to kill the victim. Concerning the statements' trustworthiness, the record shows not only that the victim and Nottingham were sisters, but also that the victim placed great trust in Nottingham, that the victim sought refuge from appellant by fleeing to Nottingham's apartment, and that Nottingham took action to protect the victim from appellant. The record also shows that the victim had an extremely close relationship with her oldest daughter, Sophia Howard, and confided in her regularly about a wide range of subjects. As for the victim's younger daughter, Stephanie, the record shows that shortly before her death, the victim began confiding in her regularly about the troubled relationship between the victim and appellant. Regarding witness King, the record shows that at the time of the shooting, she had been a close family friend for approximately five years and was a confidant of the victim. We also note that the victim confided in all four of these witnesses about appellant's assault against her very shortly after the assault took place and in conjunction with seeking help to avoid any further acts of violence. Moreover, we can discern no indication that the victim had a reason to fabricate the substance of her statements.[10]

Based on these factors, we conclude the trial court did not err in finding there were sufficient guarantees of trustworthiness connected with the victim's hearsay statements to warrant their admission under the necessity exception to the rule against hearsay evidence.[11]

---

[6] *Chapel v. State*, 270 Ga. 151, 154-156 (510 SE2d 802) (1998).

[7] *Dolensek v. State*, 274 Ga. 678, 680 (558 SE2d 713) (2002).

[8] *Ward v. State*, 271 Ga. 648, 650 (520 SE2d 205) (1999).

[9] See *Chapel*, 270 Ga. at 155.

[10] See *Lee v. State*, 270 Ga. 626, 627 (513 SE2d 225) (1999).

[11] At trial, appellant failed to object to the police officers' testimony concerning what the victim told them on the day of the murder, and hence any complaint about such testimony is waived on appeal. *Waldrip v. State*, 267 Ga. 739, 748 (482 SE2d 299) (1997).

3. Appellant maintains the trial court erred in denying his motion to suppress the results of the gunshot residue test conducted on his hands at the time of arrest, claiming the test was an unlawful search that violated the constitutional privilege against self-incrimination. However, " '[s]wabbing the hands of an accused to lift gunshot residue does not constitute an unconstitutional search or seizure; and testimony of an expert concerning the swabbing procedure, its physical results and his opinion based on those results does not violate the privilege of the accused against self-incrimination.' "[12]

4. Appellant claims the trial court erred in admitting the audio-taped statement of witness Nottingham, recorded three days after the shootings occurred while Nottingham was hospitalized. A witness's prior consistent statement is admissible only where: (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.[13] A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.[14]

Our review of the record in this case reveals that these prerequisites were satisfied. While cross-examining Nottingham, appellant's counsel challenged her testimony concerning the events surrounding the shootings, and implied her testimony was fabricated by pointedly asking whether appellant's version of events was not, in fact, accurate.[15] At the hearing on appellant's motion for new trial, trial counsel conceded that he did everything possible to challenge Nottingham's veracity. Nottingham was present and testified at appellant's trial, and was excused by appellant subject to a right of recall, making her available for cross-examination. It follows that the trial court did not err by admitting Nottingham's prior consistent statement into evidence.

5. Contrary to appellant's argument, the trial court did not err in declining to charge the jury on the offense of voluntary manslaughter, as there was no evidence to suggest the killing was committed solely due to passion and in response to provocation that would have caused a reasonable person to react in the same manner.[16]

---

[12] *Jones v. State*, 277 Ga. 36, 38 (586 SE2d 224) (2003), quoting *Strickland v. State*, 247 Ga. 219, 225 (275 SE2d 29) (1981).

[13] *Woodard v. State*, 269 Ga. 317, 320 (496 SE2d 896) (1998).

[14] Id.

[15] Appellant claimed that Nottingham had reached for a gun tucked into his waistband and that in the ensuing struggle, the gun had discharged, shooting both the victim and Nottingham.

[16] *Alexis v. State*, 273 Ga. 423, 424 (541 SE2d 636) (2001).

6. At trial, the jury was permitted to hear an audio recording of Nottingham's 911 telephone call, made at the time of the shootings. However, because the trial court deemed the recording to be of relatively poor quality, no written transcription was provided to the jurors. During deliberations, the jury asked to hear the audio recording once again. The trial court allowed it to be replayed and gave a curative instruction to the jurors, telling them not to give the recording additional weight merely because they had heard it twice.

Appellant claims the trial court abused its discretion by replaying the audio recording in open court. However, it is established that after deliberations have begun, a trial court has discretionary authority to permit the jury, at its request, to rehear testimony in the defendant's presence.[17] The fact that in this case the testimony was replayed from a recording rather than reread from stenographic notes is of no legal consequence.[18]

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 3, 2004 —
RECONSIDERATION DENIED JUNE 28, 2004.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Thurbert E. Baker, Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.

---

[17] *Johns v. State*, 239 Ga. 681, 683 (238 SE2d 372) (1977).
[18] Id. See *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976).