## S12A0322. McNAUGHTON v. THE STATE.

(725 SE2d 590)

THOMPSON, Justice.

Appellant Alec McNaughton was convicted of the malice murder and aggravated assault of his wife, Cathy McNaughton, and sentenced to life in prison.[1] He appeals from the denial of his motion for new trial asserting the trial court erred by admitting similar transaction evidence and evidence of statements made by the victim regarding prior difficulties. Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the jury was authorized to find that appellant fatally stabbed his wife in the torso, arms and legs 31 times as she sat in the office of their Coweta County home. The State presented evidence that appellant and the victim had been experiencing financial and marital difficulties, and on at least one prior occasion appellant physically abused the victim. The victim created a written statement documenting the details of that event, and she told a co-worker she had taken photographs of her physical injuries which she kept in a "safe place." In the months leading up to her death, the victim told appellant, family members, and friends she was contemplating divorce.

On the day of the crimes, appellant called 911 at approximately 7:30 p.m. He told the operator he found his wife on the floor bleeding. When police arrived, the victim was already dead, rigor mortis and lividity already having set in. There was no evidence of a burglary or forced entry. Police discovered evidence of the victim's blood on tissues from the office and a towel found in the victim's bathroom near a bottle of bleach. Although there was a significant amount of blood on the carpet and splattered on the walls of the victim's office, other than the trace elements on the towel and tissues, no blood evidence was found outside the victim's office or leading into other parts of the home.

Appellant told officers he last saw the victim at 11:00 a.m. when he left home to meet his mother in Sandy Springs, Georgia. He also claimed he was in Sandy Springs until he returned home to Coweta County that evening and found his wife dead. Evidence established,

---

[1] The crimes occurred on February 15, 2009. Appellant was indicted by a Coweta County grand jury on July 16, 2009, on charges of malice murder, felony murder, and family violence aggravated assault. He was tried on August 2-10, 2010 and found guilty of all counts. Appellant was sentenced to life in prison on the malice murder count. The felony murder and aggravated assault convictions were merged and vacated by operation of law. See *Gresham v. State*, 289 Ga. 103 (6) (709 SE2d 780) (2011); *Malcolm v. State*, 263 Ga. 369, 373-374 (434 SE2d 479) (1993). A motion for new trial was filed on August 31, 2010 and amended on August 19, 2011 and August 23, 2011. The trial court denied the motion for new trial on August 30, 2011. Appellant filed a notice of appeal on September 9, 2011. The appeal was docketed to the January 2012 term of this Court and orally argued on February 6, 2012.

however, that appellant called his home telephone at 2:33 p.m. from his cellular telephone. Experts testified the call was routed through a cellular tower only two miles from appellant's home and could not have originated anywhere near Sandy Springs. In addition, a neighbor testified he saw a vehicle matching the description of appellant's vehicle leaving the victim's home between 2:00 and 3:00 p.m. on the day of the crimes.

Construed in the light most favorable to the verdicts, we find the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by admitting similar transaction evidence which, he argues, was inadmissible because the incidents were not sufficiently similar or were too remote in time to be admissible at trial. See *Williams v. State*, 261 Ga. 640, 641-642 (2) (409 SE2d 649) (1991). The trial court determined the challenged evidence was admissible for the purpose of showing appellant's course of conduct and bent of mind. We review the trial court's decision to admit similar transaction evidence under an abuse of discretion standard and review the court's factual findings as to the similarity of the incidents under a clearly erroneous standard. *Pareja v. State*, 286 Ga. 117, 121 (686 SE2d 232) (2009); *Tatum v. State*, 297 Ga. App. 550 (1) (677 SE2d 740) (2009).

(a) Three of the challenged similar transactions involved incidents in which appellant perpetrated acts of violence against his then-wives. As in the present case, each of these similar transactions involved unprovoked acts of violence by appellant against his spouse during times of marital difficulty and at times when the women sought to separate or divorce.[2]

> [I]n cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against . . . different persons with whom the

---

[2] Appellant's first wife, Linda Jones, testified that at the end of her marriage to appellant he slapped, badgered and threatened her, and demanded she have intimate relations with him. When she refused, appellant beat her severely with his fist and a bottle. Appellant's second wife, Linda McCasland, testified that after they separated, appellant came to where she was staying to retrieve personal items. When she refused to allow him to look through the home, he grabbed her and threw her over a glass table, causing bruises. Susan Knox, appellant's third wife, testified that while they were separated, appellant became very angry over their daughter's phone bill. In the middle of the night, appellant disconnected the home's phone line, loaded a shotgun, and when confronted by Knox said he was going to kill their daughter, kill Knox, and then kill himself. The daughter called police from her cell phone.

accused had a similar emotional or intimate attachment. (Footnote omitted.) [Cit.]

*Hall v. State*, 287 Ga. 755, 757 (699 SE2d 321) (2010). Based on the evidence establishing the similarity between the crimes charged and the violent acts perpetrated by appellant against his former spouses, we find no abuse of the trial court's discretion by admitting evidence of these similar transactions.

We are not persuaded by appellant's argument that the lapse in time between the similar transactions and the charged crimes required exclusion of this evidence. As a general rule, the lapse in time goes to the weight and credibility of the evidence, not to its admissibility at trial. *Hinton v. State*, 280 Ga. 811 (6) (631 SE2d 365) (2006). When the lapse in time is especially great, however, courts must consider whether evidence of the similar transaction is so remote in time that any value it might have had cannot overcome the prejudice to the defendant. Although in such cases the passage of time is "one of the more important factors to weigh in considering the admissibility of the evidence in question, it is not wholly determinative." (Citation omitted.) *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252) (1998).

Given the strong similarities in this case between the charged crimes and the incidents at issue, the purpose for which the evidence was offered, the fact that there was no break in the course of conduct which the State argues the evidence establishes, and the presence of sufficient evidence corroborating the similar transactions, including police reports, 911 audiotapes, and appellant's own admissions, we conclude any prejudice from the age of these similar transactions was outweighed by the probative value of the evidence. See *Pareja*, supra, 286 Ga. at 119-121. See also *Hall*, supra, 287 Ga. at 757 (2) (evidence of 13- and 15-year-old similar transactions admissible); *Phillips v. State*, 287 Ga. 560 (4) (697 SE2d 818) (2010) (evidence of 18-year-old similar transaction admissible); *Wright v. State*, 259 Ga. App. 74 (1) (576 SE2d 64) (2003) (34-year-old similar transaction evidence admissible); *Bryson v. State*, 210 Ga. App. 642 (2) (437 SE2d 352) (1993) (31-year-old similar transaction evidence admissible). Compare *Slakman v. State*, 272 Ga. 662, 669 (4) (533 SE2d 383) (2000) (absence of evidence that defendant abused second wife created "significant break in the 'course of criminal conduct'" affecting admissibility of similar transaction evidence).

(b) Appellant also contends the court erred by admitting the testimony of Jose Cruz-Hernandez, appellant's cellmate while awaiting trial in this case, regarding an incident in which appellant stabbed Cruz-Hernandez in the neck with a pencil. Appellant contends this prior transaction was not sufficiently similar because it

involved a different weapon used against an individual appellant barely knew.

The record demonstrates that while incarcerated and awaiting trial in Coweta County, appellant crept behind Cruz-Hernandez and stabbed him in the neck. This incident, like the attack on the victim in this case, involved an unprovoked, surprise attack with a sharp instrument. Although it may have involved an attack on a cellmate rather than a family member and a pencil rather than a knife or other sharp instrument as in the crimes before us, "[w]hen considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. [Cits.]" (Punctuation omitted.) *Phillips*, supra, 287 Ga. at 564. Because the evidence was sufficient to establish the required similarity between the charged crimes and the attack on Cruz-Hernandez and was probative of appellant's bent of mind and course of conduct, the trial court did not abuse its discretion by admitting evidence of this similar transaction.

3. During trial, the court permitted several witnesses to testify about statements the victim made pertaining to prior difficulties between appellant and the victim.[3] Appellant argues this hearsay evidence was inadmissible both because its admission violated his rights under the Confrontation Clause and because it did not fall within Georgia's necessity exception to the hearsay rule. See OCGA § 24-3-1 (b).

(a) None of the hearsay statements challenged by appellant were testimonial in nature in that they were made by the victim to a family member, friend, or co-worker before the commission of the crimes with no expectation that they would be used in a trial. See *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004); *Bell v. State*, 278 Ga. 69 (3) (597 SE2d 350) (2004). Because the challenged evidence was non-testimonial, appellant's right to confrontation was not implicated.

(b) Appellant also argues hearsay evidence of the victim's statements was improperly admitted under the necessity exception to the hearsay rule. See OCGA § 24-3-1 (b). There are three basic requirements for non-testimonial hearsay evidence to be admissible under the necessity exception: (1) the declarant is unavailable; (2) the declarant's statement is relevant to a material fact and is more probative as to that fact than other evidence that may be procured

---

[3] The trial court allowed the State to present this evidence through the testimony of eight witnesses: Michelle and Heather Mendenhall, the victim's daughters; Linda Mascarenhas, the victim's sister; Jerome Langford, a co-worker of the victim; Dan Mayer, the victim's work supervisor; Sonya Lawrence, the victim's hairdresser; Leigh McNaughton, appellant's sister; and Sandra Harmon, a mental health nurse who treated the victim.

and offered; and (3) the statement exhibits particularized guarantees of trustworthiness. *Evans v. State*, 288 Ga. 571, 572 (2) (707 SE2d 353) (2011).

The first and second requirements for admissibility, unavailability of the declarant and materiality and probativeness, were met with respect to the hearsay testimony of each of the challenged witnesses. Unavailability was met because the declarant, the victim, was deceased. *Watson v. State*, 278 Ga. 763 (2) (a) (604 SE2d 804) (2004). Materiality and probativeness were met because the statements were relevant to show appellant's motive, intent, and bent of mind, as well as the relationship between appellant and the victim. Id.

Whether a trial court abused its discretion by finding the third requirement, particularized guarantees of trustworthiness, has been met demands consideration of the totality of the circumstances surrounding the making of the statement. *Culmer v. State*, 282 Ga. 330 (2) (647 SE2d 30) (2007). Accordingly, we review this requirement separately as to each of the challenged witnesses:

*Michelle and Heather Mendenhall.* Michelle Mendenhall testified her mother, the victim, told her appellant had choked her on a previous occasion and she planned to seek a divorce. Michelle stated she was very close with her mother, who had been her primary care giver. Heather Mendenhall similarly testified her mother told her she had been injured in an altercation with appellant during which he pulled her by the hair and dragged her out of her car. Like her sister, Heather testified she was good friends with her mother, her mother confided in her regularly, they spoke daily, and they discussed personal matters.

We conclude the hearsay testimony of Michelle and Heather Mendenhall was admissible. The uncontradicted statements exhibited particularized guarantees of trustworthiness because the evidence showed these witnesses had a close familial relationship with the victim and she regularly confided in them about personal matters. A trial court does not abuse its discretion by finding guarantees of trustworthiness where the declarant made statements to a close family member, placed confidence in the witness, and turned to the witness for help with personal problems. See *Tuff v. State*, 278 Ga. 91 (2) (597 SE2d 328) (2004).

*Linda Mascarenhas.* Mascarenhas, the victim's sister, testified the victim told her that during an argument, appellant pulled her out of her car by her hair, hit her, and dragged her across their driveway into their garage. The victim also stated she feared appellant was going to kill her, and she planned to divorce him. With regard to her relationship with the victim, Mascarenhas testified they were very close and they discussed life events with each other. These state-

ments exhibited particularized guarantees of trustworthiness because the victim and Mascarenhas were close family members, and they frequently discussed personal matters. See *Tuff*, supra, 278 Ga. at 93. In addition, Mascarenhas' testimony regarding the victim's altercation with appellant in the driveway was cumulative of other legally admissible evidence, and therefore, any error in the admission of this testimony was harmless. See *Brooks v. State*, 281 Ga. 514 (4) (640 SE2d 280) (2007).

*Sonya Lawrence.* Sonya Lawrence testified the victim told her she intended and was making arrangements to separate from appellant and force him to move out of their home. Lawrence further stated she had been the victim's hairstylist and friend for three years, they spoke on the telephone and in person on a regular basis, and they were confidantes who frequently spoke about personal events. This Court consistently has held that hearsay testimony by close, personal friends of the declarant with whom the declarant shared personal confidences is admissible under the necessity exception. See *Watson*, supra, 278 Ga. at 765 (2) (a). Based on the evidence in this case, we conclude Lawrence's testimony concerning the victim's statements was admissible. See *Tuff*, supra, 278 Ga. at 93.

*Sandra Harmon and Dan Myer.* Sandra Harmon is a certified mental health nurse who provided employee counseling services. She testified the victim came to see her to complain of a domestic violence incident involving appellant. The victim stated appellant grabbed her, threw her onto their driveway pavement, kicked and hit her, and threatened to kill her. After recounting this incident, the victim asked Harmon to take photographs to document her injuries, which Harmon did. Dan Myer, the victim's work supervisor, testified that on one occasion, after missing five days of work, the victim returned and described how appellant beat her in their driveway and garage. She also told Myer she took pictures of her injuries after the beating. With respect to his relationship with the victim, Myer stated he was the victim's supervisor and he spoke with the victim regularly.

Although the record does not show the victim was particularly close with either Harmon or Myer, the victim's statements about which these witnesses testified exhibited particularized guarantees of trustworthiness. The statements were part of spontaneous exchanges between the victim and the witnesses, the victim had no reason to lie to the witnesses, and the victim's statements about the altercation were corroborated by her visible injuries. See *Cawthon v. State*, 289 Ga. 507, 509 (2) (c) (713 SE2d 388) (2011). Considering the totality of the circumstances, we find no abuse of discretion in admitting this hearsay testimony under the necessity exception.

*Leigh McNaughton.* Leigh McNaughton, appellant's sister, testified the victim told her appellant was draining her finances and she

intended to divorce him if it continued. She also stated the victim showed her photographs of herself with bruises and swelling. Leigh did not testify as to her relationship with the victim, other than to state that she knew the victim because she was her brother's wife and had spent holidays with the family. Even assuming the lack of evidence pertaining to this witness' relationship with the victim failed to provide the necessary guarantees of trustworthiness, we conclude admission of this evidence was harmless because Leigh's testimony was cumulative of other, legally admissible evidence. See *Brooks*, supra, 281 Ga. at 518 (4); *Myers v. State*, 275 Ga. 709, 713 (2) (572 SE2d 606) (2002). Specifically, the victim's adult daughters and sister testified the victim stated she intended to divorce appellant, and Lawrence testified the victim told her she intended to force the appellant to move out of their home. In addition, Harmon testified regarding the photographs of the victim's injuries and appellant admitted he had an altercation with the victim that caused the injuries exhibited in the photographs.

*Jerome Langford.* We similarly conclude there was no harmful error in the admission of Langford's testimony. Langford, who worked with the victim, testified the victim told him she intended to divorce appellant and would ensure appellant would not receive any more money from her. He offered testimony establishing that he had worked with the victim for almost two years, their cubicles were side by side, they were close friends, and he remained in contact with the victim after they stopped working together. While the admission of this witness' hearsay testimony may present a close question as to admissibility, we need not address this issue because, like the testimony of Leigh McNaughton, Langford's testimony was cumulative of other properly admitted evidence. See *Brooks*, supra, 281 Ga. at 518; *Myers*, supra, 275 Ga. at 713.

For the specific reasons stated above, we find all of the hearsay testimony challenged in this enumeration of error was either admissible under the necessity exception to the hearsay rule or its admission constituted harmless error.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who concurs in Divisions 1, 2 (a), 3, and in the judgment.*

DECIDED APRIL 24, 2012.

*Jennifer A. Trieshmann*, for appellant.
*Peter J. Skandalakis*, District Attorney, *Kevin T. McMurry*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Paula*

*K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.