S13A0222. REAVES v. THE STATE.

(739 SE2d 368)

THOMPSON, Presiding Justice.

Appellant Rodney Reaves was convicted of the felony murder of his 11-year-old daughter and other related crimes.[1] He appeals from the denial of his motion for new trial, asserting that the trial court erred by excluding the testimony of certain witnesses and failing to properly instruct the jury and that trial counsel provided ineffective assistance. Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence shows that appellant called 911 after he discovered his daughter, Joella, lying dead in her bed. The medical examiner determined Joella died as a result of renal failure triggered by a release of myoglobin caused by severe trauma to her body. Joella's buttocks were so severely beaten that fat cells liquefied, eventually causing blockage in her kidneys and kidney failure. She also suffered from torn tricep and shoulder muscles, injuries which required great amounts of force and would have caused significant pain; abrasions on her head; pattern injuries on her face; two black eyes; bruised lips and gums; a tear on one ear; puncture wounds on her face; and injuries covering her legs. Joella's wrists were swollen in a manner consistent with having been tied with wire. Police found a baseball bat and broken umbrella in the home matching the child's pattern injuries.

Appellant gave a statement to police admitting that in the days preceding Joella's death, he and Joella's stepmother, Charlott, had disciplined Joella by placing her in time out in the garage and ordering her to "write her lines," an exercise which required her to repeatedly write, "I am a thief, a liar, and good for nothing, and I stink" on a pad of paper. Over the course of four days, appellant and his wife put Joella in the garage, held her down, spanked her, hit her

---

[1] The crimes occurred between November 26, 2003 and December 1, 2003. A Henry County grand jury subsequently indicted appellant on charges of malice murder, two counts of felony murder, cruelty to a child in the first degree and aggravated battery. The State sought the death penalty. After a bifurcated trial on January 22-February 10, 2009, the jury acquitted appellant of the malice murder charge. The jury found appellant guilty of felony murder based on aggravated battery, cruelty to a child in the first degree, aggravated battery, and with regard to the remaining felony murder count, found him guilty of the lesser included crime of cruelty to a child in the first degree. On February 20, 2009, appellant was sentenced to life imprisonment for felony murder plus a 20-year term of imprisonment on the conviction for cruelty to a child in the first degree. The verdict on the remaining felony murder charge was vacated by operation of law and the remaining charges merged. See *Malcolm v. State*, 263 Ga. 369, 371-374 (434 SE2d 479) (1993). Appellant filed a motion for new trial on March 3, 2009, which was amended on March 23, 2010 and March 31, 2010. After a hearing on April 1, 2010, the motion was denied by order dated June 17, 2011. A notice of appeal was filed on July 13, 2011 and amended on September 10, 2012. The case was docketed in this Court to the January 2013 term and submitted for decision on the briefs.

with a wooden spoon, and tied her up with speaker wire. On the evening before her death, appellant asserts Joella calmed down, and they released her. She said she was fine and went to bed. About the same time, appellant, who was in the Navy and assigned to a ship in Norfolk, Virginia, left to return to his ship. He claimed he drove as far as Durham, North Carolina, then turned around and arrived home early the next morning to find Joella dead.

The evidence adduced at trial was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant asserts the trial court erred by excluding the hearsay testimony of several witnesses concerning statements Charlott made about her relationship with Joella and previous disciplinary actions she had taken. Each of these witnesses, appellant argues, would have provided testimony admissible under the necessity exception to the hearsay rule or the exception for confessions by a co-indictee. See OCGA § 24-3-1 (b); *Drane v. State*, 271 Ga. 849, 852-853 (523 SE2d 301) (1999).

While some of the testimony proffered by appellant may have been probative regarding the difficult relationship between Charlott and Joella, none constitutes a confession as to what occurred during the relevant time period or pertaining to the crimes for which appellant was charged. Accordingly, the trial court did not err by refusing to admit the challenged testimony as the confessions of a co-indictee.

Nor was this evidence admissible under the necessity exception to the hearsay rule. At the time of appellant's trial in 2009, OCGA § 24-3-1 (b) precluded the admission of hearsay evidence except in specified cases from necessity.[2] In order for hearsay to be admitted under the necessity exception, the party offering the testimony must show that the declarant's testimony is relevant and more probative of a material fact than other available evidence and that it exhibits particular guarantees of trustworthiness. *McNaughton v. State*, 290 Ga. 894 (3) (725 SE2d 590) (2012).

> In assessing whether an out-of-court statement has sufficient indicia of trustworthiness, this Court looks at the totality of the circumstances; the initial determination as to whether a statement is trustworthy is a matter for the trial

---

[2] Georgia adopted a new Evidence Code effective January 1, 2013.

court's discretion, the exercise of which will not be overturned absent an abuse of that discretion. [Cit.]

*Brown v. State*, 291 Ga. 892, 896 (734 SE2d 23) (2012).

(a) Nedra Ball was a friend of Charlott who lived in Texas but had known Charlott for many years. Ball stated she talked with Charlott several times each week and often on weekends. Charlott confided in Ball about Joella's behavior, stating she was having problems with Joella and had put her in the garage. Ball admitted, however, that she had no contact with Charlott the week before or any time after the crimes and she did not learn about Joella's death for more than two years. Although Charlott's statements to Ball exhibited some guarantees of trustworthiness because Charlott and Ball were close friends who frequently talked about personal matters, we do not find her testimony is more probative of a material fact than other available evidence. Rather, this testimony was cumulative of other legally admissible evidence, including appellant's statements to police regarding what Charlott told him had been happening at home while he was away. See *Nix v. State*, 280 Ga. 141 (5) (625 SE2d 746) (2006). Similarly, even assuming it was error to exclude Ball's testimony that she heard Charlott call Joella a "bitch," exclusion of this evidence was harmless in light of other evidence properly admitted demonstrating the difficult and contentious relationship between Charlott and Joella.

(b) Appellant proffered the testimony of John Roberts, Charlott's supervisor at work, who would have testified that Charlott told him Joella was bigger than her and that Charlott got angry when she spoke of Joella. The record is devoid, however, of any evidence regarding Charlott's relationship with Roberts other than as supervisor and employee, any evidence about the context in which the statements were made, or any evidence corroborating Charlott's statements.[3] Considering the totality of the circumstances, the trial court did not abuse its discretion by finding the evidence presented was insufficient to establish the requisite guarantee of trustworthiness. Compare *McNaughton*, supra, 290 Ga. 894 (3) (b) (victim's statements to supervisor were admissible under necessity exception because they were part of spontaneous exchanges between the victim and witness, the victim had no reason to lie to the witness, and victim's statements about physical abuse were corroborated by her visible injuries).

---

[3] In fact, the record demonstrates that Joella weighed just 78 pounds at the time of her death and was substantially smaller than Charlott in both weight and stature.

(c) Ebony Johnson would have testified that Charlott told her she felt uncomfortable having Joella sleep near her, that Joella needed to be separated from the family, and that she placed Joella in the garage. As to Johnson's relationship with Charlott, she stated they were friends. Although it appears that Charlott may have confided in Johnson on one occasion about a personal matter, in the absence of evidence of a close, personal relationship between Charlott and Johnson or that they regularly confided in each other about personal matters, we cannot say the trial court abused its discretion by finding Johnson's testimony exhibited insufficient guarantees of trustworthiness.

(d) Serita King, a co-worker of Charlott, spoke with Charlott on the morning of Joella's death. She would have testified that Charlott told her Joella had been acting up all weekend and that Charlott got upset with King when she asked why Charlott did not call police. Charlott also asked King about a friend who had been convicted of manslaughter. We find no reversible error in the exclusion of testimony regarding Charlott's statement about Joella's behavior as this testimony was cumulative of other admissible evidence. See *Nix,* supra, 280 Ga. at 141 (5). With regard to King's testimony about Charlott's reaction to the suggestion she should have called police and Charlott's question about King's friend, even assuming this testimony is not inadmissible hearsay,[4] we find its exclusion was harmless. Other evidence establishing Charlott's involvement in the crimes and her refusal to call police or seek medical attention for Joella was admitted at trial. Thus, admission of this evidence was not critical to appellant's defense. Moreover, the only issue for the jury in this case was whether appellant was guilty of the crimes charged and nothing about Charlott's statements to King reflect on appellant's guilt. See *Harris v. State,* 274 Ga. 422 (5) (554 SE2d 458) (2001). The exclusion of King's testimony, therefore, was not reversible error.

3. Appellant contends the trial court erred when it failed to instruct the jury that with regard to the two felony murder counts, it could find appellant guilty of the lesser included offense of involuntary manslaughter. He argues the jury could have found that he caused Joella's death as a result of a battery when he fell on her in the garage, thus authorizing the charge on involuntary manslaughter.

Because the record reflects the trial court gave the requested instruction with regard to count three of the indictment, the count

---

[4] See *Cawthon v. State,* 289 Ga. 507 (2) (b) (713 SE2d 388) (2011) (witness may testify to his own observations); *Fugitt v. State,* 256 Ga. 292 (1) (c) (348 SE2d 451) (1986) (declarant's inquiry about amount of insurance not hearsay because statement not offered to prove truth of matter asserted).

alleging felony murder based on aggravated battery, we find no error in the court's instruction as to that count. With regard to the court's charge on count two, alleging felony murder based on cruelty to a child in the first degree, appellant did not request a charge on the lesser included offense of involuntary manslaughter based on a battery and did not object to the court's refusal to charge the jury on this ground at trial. Because no objection was made to the instruction at trial, we review appellant's claim for plain error. See *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011); OCGA § 17-8-58 (b). Under this analysis, we must determine whether: (1) there is an error that has not been affirmatively waived; (2) the legal error is clear and obvious rather than subject to reasonable dispute; (3) the error affects appellant's substantial rights, generally meaning that it affected the outcome of the proceedings; and (4) the error "seriously affects the fairness, integrity or public reputation" of the judicial proceedings. (Punctuation omitted.) *Kelly*, 290 Ga. at 33.

Pretermitting the issues of whether appellant met his burden with respect to the other prongs, we find no error in the court's failure to charge involuntary manslaughter as a lesser included offense under count two because such a charge was not authorized by the evidence. Appellant asserted Joella may have been injured when he accidentally fell on her, but he specifically denied any intent to cause her harm. The crime of battery is committed when a person "intentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-23.1 (a). Thus, if the jury believed appellant's assertion that Joella was fatally injured as a result of an accidental fall, no battery was committed. If the jury accepted the State's evidence at trial, then it was authorized to find appellant guilty of felony murder or the lesser included offense of cruelty to a child in the first degree. Where, as here, the evidence demonstrates either the complete offense as charged or that no offense was committed, the trial court is not required to charge on a lesser included offense not supported by the evidence. *Moore v. State*, 283 Ga. 151 (2) (656 SE2d 796) (2008).

4. Appellant contends trial counsel were ineffective for failing to call his son, Rodney Reaves, Jr., as a witness at trial. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). To satisfy the first prong, appellant must overcome the strong presumption that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made

in the exercise of reasonable professional judgment." Id. To satisfy the second prong, appellant must demonstrate there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783.

Even assuming counsel were deficient for failing to call Rodney as a witness at trial, we agree with the trial court's conclusion that appellant failed to meet the prejudice prong of the *Strickland* test. Rodney did not testify at the hearing on appellant's motion for new trial, and appellant presented no legally acceptable substitute for Rodney's testimony showing what he would have testified to and how it would have been relevant and helpful to appellant's defense. See *Grell v. State*, 291 Ga. 615 (4) (b) (732 SE2d 741) (2012) (defendant cannot use counsel's hearsay testimony about uncalled witness' expected testimony to establish truth of that witness' testimony); *Dickens v. State*, 280 Ga. 320 (2) (627 SE2d 587) (2006) (same). In the absence of such evidence, appellant failed to make an affirmative showing of how counsels' failure to call Rodney caused him prejudice, and the trial court properly denied his claim of ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 4, 2013.

*J. Scott Key*, for appellant.

*Tommy K. Floyd, District Attorney, James L. Wright III, Thomas L. Williams, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.