**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)** **http://www.gaappeals.us/rules/**

**May 23, 2013**

# In the Court of Appeals of Georgia

A13A0472. JONES v. THE STATE.                                    DO-018 C

DOYLE, Presiding Judge.

Changa Jones was charged with murder,[1] felony murder,[2] and aggravated assault.[3] A Henry County jury found him guilty of aggravated assault, but was unable to reach a verdict as to murder and felony murder.[4] Jones appeals his aggravated assault conviction, challenging the sufficiency of the evidence and arguing that the trial court abused its discretion by admitting hearsay testimony regarding prior difficulties between the victim and Jones. We affirm, for the reasons that follow.

---

[1] OCGA § 16-5-1 (a).

[2] OCGA § 16-5-1 (c).

[3] OCGA § 16-5-21 (a) (2).

[4] The jury could not reach a decision with regard to murder and felony murder, so the trial court entered a mistrial as to those counts.

When reviewing the sufficiency of the evidence on appeal,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[5]

So viewed, the record shows that on September 1, 2005, Jones's wife, Natasha Jones, called 911 from a subdivision park, crying and stating that she needed help because "he . . . busted my window," and she had glass "all over [her]." Natasha indicated that the incident occurred at home. An off-duty police officer stopped to help Natasha, and he told the 911 operator that there was "glass all over [Natasha]." Officer Pamela Pressly responded to the scene, she observed a landscaping brick on the windshield of Natasha's vehicle, which had damage to the hood and the windshield. According to Officer Pressly, Natasha was "very scared" and "did not

---

[5] (Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

want to go back home." Natasha gave a written statement, indicating therein that after Jones slapped her with his open hand during an altercation, Natasha ran to her vehicle and drove away, but Jones followed her and threw bricks at her vehicle as she drove down the street. Pressly escorted Natasha to her home, looking for Jones, but he was not there.

Natasha also called her sister, Rolanda Brown. When Brown arrived at the park, she observed that the windshield to Natasha's vehicle "was smashed in," and Natasha had "specks of glass on her, little speckle spots of blood, where her windshield was busted." Natasha was frightened, and Brown took her home, retrieved Natasha's son, and took them to a hotel so that Jones would not know where they were.

Jones called Brown later that night and asked her to talk to Natasha about dropping the charges, stating that he "wasn't trying to kill her. He was just trying to stop her from leaving, and . . . if he wanted to kill somebody, he [knew] how to do it." Jones also advised Officer Pressly that he and Natasha "were working on their marriage [and] wanted to try to work things out," and he requested that the charges be dropped; Natasha also attempted to drop the charges against Jones after his arrest.

3

The following month, on October 24, 2005, Natasha was killed in her home.[6] Jones was indicted and charged with murder and felony murder. Following two trials, which resulted in hung juries, the State re-indicted Jones, charging him with felony murder, murder, and aggravated assault against Natasha. The jury was unable to reach a verdict as to the murder counts, but found Jones guilty of aggravated assault. This appeal followed.

1. The indictment alleged that Jones committed aggravated assault "with a concrete landscaping block, an object which when used offensively against another person is likely to result in serious bodily injury, by throwing said block toward a vehicle occupied by . . . Natasha. . . ." Jones challenges the sufficiency of the evidence, arguing that there was no "properly admitted evidence" that Natasha was in her vehicle when he threw the brick at it.[7]

Natasha's statement to the police that Jones threw the brick at her vehicle while she was driving down the street was admitted without objection. Jones argues, however, that notwithstanding his failure to object, the statement was hearsay, which

[6] The medical examiner concluded that the cause of death was strangulation and that Natasha also sustained blunt force trauma and a puncture wound to her neck.

[7] We note that Jones does not argue that there was insufficient evidence that he threw a brick at Natasha's vehicle.

4

was without probative value and cannot be considered when evaluating the sufficiency of the evidence.[8] Pretermitting whether Natasha's statement to the police officer was properly admitted under an exception to the hearsay rule, the evidence that the off-duty officer observed glass "all over" Natasha and that Natasha's sister observed glass and speckles of blood on Natasha immediately after the incident support the jury's conclusion that Jones threw the brick at Natasha's vehicle while she was in it.[9] Therefore, this enumeration of error fails.

2. Jones also contends that the trial court erred by admitting the testimony of Natasha's other sister, Nicole Watson, that Natasha told her that "basically her marriage had come to an end" and that she was considering filing for divorce. This argument is without merit.

---

[8] See, e.g., *Feagin v. State*, 317 Ga. App. 543, 548 (3) (731 SE2d 778) (2012) ("victim's prior statement to the responding officer was inadmissible hearsay, which is wholly without probative value and cannot be considered in determining the sufficiency of the evidence, even if introduced without objection").

[9] See *Bell v. State*, 284 Ga. 790, 791 (1) (671 SE2d 815) (2009) ("the State may use direct and circumstantial evidence to prove guilt, and an appellate court reviewing a trial court's denial of a motion for directed verdict of acquittal applies the 'sufficiency of the evidence test of *Jackson v. Virginia*") (citations omitted); *Collier v. State*, 157 Ga. App. 109, 110 (2) (276 SE2d 262) (1981).

The trial court admitted Watson's testimony under the necessity exception to the hearsay rule.

> There are three basic requirements for non-testimonial hearsay evidence to be admissible under the necessity exception: (1) the declarant is unavailable; (2) the declarant's statement is relevant to a material fact and is more probative as to that fact than other evidence that may be procured and offered; and (3) the statement exhibits particularized guarantees of trustworthiness.[10]

Jones does not challenge the first two prongs, but argues that the trial court erred by admitting the statement because it did exhibit particularized guarantees of trustworthiness. We disagree.

Watson testified that she moved into her sister's subdivision so that they could be close to each other, and they confided in each other. According to Watson, she and Nicole discussed personal matters with each other "[a]ll the time," and they sought guidance from one another. "A trial court does not abuse its discretion by finding guarantees of trustworthiness where the declarant made statements to a close family member, placed confidence in the witness, and turned to the witness for help with

---

[10] *McNaughton v. State*, 290 Ga. 894, 898-899 (3) (b) (725 SE2d 590) (2012).

6

personal problems."[11]     Accordingly, the trial court did not abuse its discretion by admitting Watson's testimony concerning Natasha's out-of-court statements.

In addition, Watson's testimony regarding the state of Natasha's marriage was cumulative of other evidence, including Natasha's journal, in which she wrote that Jones "beat [her]," that he threatened to kill her, and that he did not want to "be with [her]." Thus, this enumeration is without merit.[12]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[11] Id. at 898 (3) (b), citing *Tuff v. State*, 278 Ga. 91, 92-93 (2) (597 SE2d 328) (2004). See also *Heidt v. State*, 292 Ga. 343, 350 (6) (736 SE2d 384) (2013).

[12] See *McNaughton*, 290 Ga. at 899 (3) (b).