306 Ga. 571
FINAL COPY

S19A0723.  JACOBS v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Betty Jacobs appeals her convictions for the murder of her ex-husband, Davis Jacobs, and possession of a handgun during the commission of a crime, contending that she received ineffective assistance of trial counsel.[1] For the reasons set forth below, we affirm.

1. In the light most favorable to the verdict, the evidence at trial shows that Betty and Davis divorced in May 2007 for the second time after a long history of domestic difficulties, including multiple

---

[1] On November 14, 2007, Betty was indicted for malice murder, felony murder, and possession of a firearm during the commission of a crime. Following a May 26, 2009, jury trial, Betty was found guilty of malice murder and possession of a firearm. Thereafter, she was sentenced to life imprisonment for malice murder and five years to be served consecutively for possession of a firearm. Betty filed a motion for new trial on June 24, 2009, and she amended it on March 12, 2013, May 9, 2013, and October 12, 2015. After two hearings, Betty's motion was denied on September 5, 2018. On September 10, 2018, Betty filed a timely notice of appeal, and her case was docketed to the April 2019 term of this Court and orally argued on June 18, 2019.

occasions on which Betty either fired a handgun at Davis or held one to his head and threatened to shoot him. Around the time of the second divorce, Betty habitually visited Davis's private office,[2] where the two would frequently argue about financial and personal matters, including Davis's extramarital affairs. Witnesses reported that Betty started the arguments, and, approximately a week prior to shooting Davis, Betty raised her hand and told Davis "to shut up or she would hit him." On August 21, 2007, Betty found old photographs of Davis with his former mistress, causing a fight between the two. Betty threatened to shoot Davis, and struck him in the back as he was leaving Betty's home. Davis then spent that evening in his office, and the following evening at a hotel.

On the morning of the shooting, Betty requested that Davis meet her in his private office at his place of business. Davis did so. A short time later, witnesses heard multiple gunshots, after which Davis exited the private office and collapsed. When police arrived, they found Betty sitting calmly in the private office, and Davis's

---

[2] Davis was an ophthalmologist.

body was in the adjacent hallway with a hammer on the ground next to his head. Betty claimed that Davis threatened her with the hammer, she shot him in self-defense, and she placed the hammer by his body so police would see it. At trial, Betty buttressed this defense with the argument that she suffered from battered person syndrome. Betty testified that Davis had physically abused her throughout their marriage, and that he routinely prescribed her addictive prescription drugs.

At trial, however, numerous witnesses testified that Betty was generally the aggressor during her arguments with Davis, and that she previously threatened to kill him. Witnesses also observed Betty physically assault Davis and use firearms to intimidate him multiple times — including a prior incident in Davis's private office when Betty fired a handgun, causing a bullet to enter the wall above Davis's shoulder. The couple's sons testified that Davis would "always be the peacemaker."

This evidence was sufficient to enable the jury to find beyond a reasonable doubt that Betty was guilty of the crimes for which she

was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also *Roper v. State*, 281 Ga. 878 (1) (644 SE2d 120) (2007) (witness credibility is for the jury to decide, as is the question of justification; therefore, the jury is free to reject a claim that the defendant acted in self-defense).[3]

2. Betty contends that her trial counsel[4] rendered ineffective assistance by: (a) failing to convey a potential plea offer to her for her consideration; (b) failing to object to allegedly inadmissible hearsay testimony; and (c) failing to present evidence and request a jury instruction regarding the defense of involuntary intoxication. These contentions have no merit.

> In order to succeed on [her] claim of ineffective assistance, [Betty] must prove both that [her] trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing

---

[3] Although Betty does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. See, e.g., *Edwards v. State*, 301 Ga. 822, 824 (1) (804 SE2d 404) (2017).

[4] Betty had three lawyers representing her at trial.

4

court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Furthermore, "reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." (Citation omitted.) *Johnson v. State*, 286 Ga. 787, 791 (2) (692 SE2d 575) (2010).

(a) Betty first contends that trial counsel were ineffective for failing to convey a potential plea offer to her for her consideration and failing to advise her regarding the offer. We disagree.

As an initial matter, it is undisputed that no formal written plea offer was ever presented in this case. At the motion for new trial hearing, the prosecutor recalled that, prior to trial, he spoke to one of Betty's trial lawyers and asked whether Betty might be interested in a plea deal, but no deal was offered at that time because any such offer would first have to be approved by Davis's family. The

5

prosecutor further testified that Betty's attorney indicated that Betty would not be interested in the plea deal. Betty's trial lawyer to whom the prosecutor spoke had a slightly different recollection, however. Betty's trial lawyer testified that the prosecutor mentioned the possibility of a deal at an informal gathering, and the prosecutor stated that, if the family was interested in any deal in the future, he would send a written offer to Betty's counsel. No such offer was ever sent, and Betty's trial lawyer did not remember rejecting any and all potential deals outright. Betty's trial lawyer did testify with certainty, however, that he would have conveyed an offer to Betty if one had been made.

Regardless of the existence of any potential deal, we need not parse its nature or the manner in which it was handled by trial counsel, as Betty has not shown prejudice. Where a defendant alleges that a plea offer was not disclosed to her,

> the defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U. S. 156, 163 (II) (B) (132 SCt 1376, 182 LE2d 398) (2012). Three criteria must be met to satisfy the prejudice prong of the *Strickland* test. The defendant

must show:

> [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164. See also *Missouri v. Frye*, 566 U. S. 134 (132 SCt 1399, 182 LE2d 379) (2012).

(Footnote omitted.) *Gramiak v. Beasley*, 304 Ga. 512, 515 (I) (B) (820 SE2d 50) (2018).

> At the motion for new trial hearing, Betty testified that
>
> [j]ust before we came to trial, I was so sure that I would not be convicted, and [one of my trial attorneys] told me that — to prepare, you know, that I could likely lose the trial. And I said, "Oh, no. Just present my evidence. I will be okay."

In addition to this testimony, all three of Betty's trial lawyers testified that Betty was extremely adamant that she was not guilty and had acted in self-defense. Betty's lawyers testified that, even if an offer had been received, Betty made clear that she would have

7

never taken it. Under these circumstances, Betty has not shown that but for the alleged ineffective advice of counsel, she would have accepted any alleged deal, even if one had actually been offered. See *Gramiak*, supra, 304 Ga. at 515. As such, her claim of ineffective assistance fails.

(b) Betty next contends that trial counsel rendered ineffective assistance by failing to object to the admission of statements made by Davis regarding his relationship with Betty because the statements were inadmissible hearsay. We disagree.

Under former OCGA § 24-3-1 (b), which is applicable to this case,

> [f]or hearsay to be admitted under the necessity exception, the proponent must establish that the testimony is necessary, that there are particular guarantees of trustworthiness connected to the declarant's statements, and that the hearsay statements are more probative and revealing than other available evidence. Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion, and the trial court's decision will only be disturbed on appeal for an abuse of such discretion. The trial court does not abuse its discretion when it uses the necessity exception to admit hearsay testimony that relates an uncontradicted statement made

8

by an unavailable witness to one in whom the declarant placed great confidence and to whom the declarant turned for help with problems.

(Footnotes omitted.) *Tuff v. State*, 278 Ga. 91, 93 (2) (597 SE2d 328) (2004).

To support her argument, Betty summarily refers to a "plethora of statements" and lists a number of pages in the transcript, making only a general argument that none of the statements showed particular guarantees of trustworthiness necessary for admission. As an initial matter, it is not this Court's responsibility to cull the record to find support for a defendant's claims. *Henderson v. State*, 304 Ga. 733 (4) (822 SE2d 228) (2018) (appellant not entitled to review of claims supported by vague assertions of error and citations to chunks of transcript). Even so, our review of the record shows that she has not proven her claim of ineffective assistance.

As an initial matter, any objection to the great majority of statements would have lacked merit, as the statements were made to family members, personal friends, and others with whom Davis

9

had a close relationship. Such statements are generally considered trustworthy for purposes of the necessity exception to the rule against hearsay. *Tuff*, supra. Other statements were merely cumulative of this majority, and reflected the same content. Furthermore, Betty's trial counsel testified that they did not object to any of the statements made by Davis and recounted by witnesses at trial for two reasons: (1) they wanted the information to be admitted to show the long history of prior difficulties between the parties and (2) they did not want to overemphasize any of the testimony to the jury by objecting to it. These are reasonable strategic bases for failing to object. See *Jones v. State*, 292 Ga. 593, 602 (7) (d) (740 SE2d 147) (2013) ("[R]easonable lawyer might have concluded that objecting to [the statements] could signal to the jury that the defense was worried about such testimony, thereby emphasizing the testimony and magnifying any harmful implications of it."). Accordingly, Betty's trial attorneys were not ineffective.

(c) Finally, Betty argues that trial counsel rendered ineffective

assistance by failing to present evidence and request a jury instruction regarding the defense of involuntary intoxication. Because the undisputed evidence shows that Betty ingested her medications of her own accord with knowledge of what the medicines were and the effects they produced, we disagree.

> Under Georgia law, one cannot be convicted of a crime where, due to involuntary intoxication, he or she lacks sufficient mental capacity to distinguish between right and wrong in relation to the actus reus. See OCGA § 16-3-4 (a). Involuntary intoxication means intoxication caused by consumption of a substance through excusable ignorance, or the coercion, fraud, artifice, or contrivance of another person. OCGA § 16-3-4 (b) (1)-(2). However, it has long been solidly established that "[v]oluntary intoxication shall not be an excuse for any criminal act or omission," OCGA § 16-3-4 (c), except in the extreme situation where the intoxication "has resulted in the alteration of brain function so as to negate intent," and "[e]ven then, the brain function alteration must be more than temporary," *Horton v. State*, 258 Ga. 489, 491 (371 SE2d 384) (1988). See *Bright v. State*, 265 Ga. 265, 273-274 (455 SE2d 37) (1995) (viable voluntary intoxication defense requires evidence of "permanent brain function alteration").

(Emphasis omitted.) *Guyse v. State*, 286 Ga. 574, 578 (2) (690 SE2d 406) (2010).

In the present matter, there is no evidence that Betty was

11

involuntarily intoxicated due to excusable ignorance, or the coercion, fraud, artifice, or contrivance of another person. Although she argues that the drugs were supplied by her husband, a physician, Betty was not simply following Davis's orders and taking medications in the quantity and the manner directed by Davis. Indeed, the record shows that Betty often demanded the prescriptions herself. The record shows that her actions were not involuntary. Therefore, trial counsel was not ineffective for failing to present a defense based on involuntary intoxication or by failing to request a jury instruction on that defense.

*Judgment affirmed. All the Justices concur, except Boggs, J., not participating.*

DECIDED AUGUST 19, 2019.

Murder. Ware Superior Court. Before Judge Gillis.

*Brian Steel*, for appellant.

*George E. Barnhill, District Attorney, Michelle C. McIntire, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.