In the Supreme Court of Georgia

Decided:   June 6, 2016

S16A0357. WILLIAMS v. THE STATE.

NAHMIAS, Justice.

Appellant Dorunte Williams was convicted of the malice murder of Stacy

Barnett, aggravated assault involving family violence against Teresa Dubose,

and possession of a firearm during the commission of a felony.  On appeal, he

contends only that the trial court erred by admitting a hearsay statement under

the necessity exception.  We affirm.[1]

---

[1] The crimes occurred on May 5, 2007.  On July 18, 2007, an Athens-Clarke County grand jury indicted Appellant for 16 crimes against Barnett (malice murder, four counts of felony murder, aggravated battery, aggravated assault, two counts of possession of a firearm by a convicted felon, and seven counts of possession of a firearm during the commission of a felony) and four crimes against Dubose (two counts of aggravated assault involving family violence, possession of a firearm during the commission of a felony, and possession of a knife during the commission of a felony). Because Appellant stipulated that he was a convicted felon, the State did not present to the jury one of the counts for firearm possession by a felon (which differed from the other count only in charging a different felony conviction), the felony murder count based on that firearm possession count, and the possession of a firearm during the commission of a felony based on that felony murder count. Appellant's first trial in September 2008 resulted in a mistrial during the State's case-in-chief.  At Appellant's second trial from November 17 to 29, 2008, the jury found Appellant guilty of all charges except one count of family violence aggravated assault and the two weapons possession offenses related to Dubose.  The trial court sentenced Appellant to serve life in prison for malice murder plus a total of 25 years for the other counts for which there were guilty verdicts and which were not vacated by operation of law or merged by the court.  On February 17, 2009, Appellant filed a timely motion for new trial, which he amended with new counsel on March 28, 2014.  The trial court denied the motion on January 27, 2015.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the January 2016 term and submitted for decision on the briefs.

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the morning of May 5, 2007, Dubose, who was Appellant's girlfriend and the mother of his two children, was with him in her Athens apartment. Appellant began acting paranoid and accused Dubose of stealing his Mega Millions lottery ticket, which he said was worth millions of dollars, and hiring someone to "knock him off and cash the ticket." Appellant, who was carrying a gun and a steak knife, demanded that Dubose call off the "hit." He cut her left hand and poked her in the right knee with the knife in an attempt to get her to identify the supposed hitman. Dubose, who had not actually stolen Appellant's lottery ticket or hired a hitman, attempted to calm Appellant down by saying that she would call off the hit. At some point, Dubose's sisters and nieces came to the apartment, and Appellant asked Dubose and her family members, "if there was a hit out to kill you, would you get them first?" Dubose left the apartment a short time later and spent the night at her niece's home in Bowman, Georgia.

Following the incident with Dubose, Appellant went to a party hosted by Sherildon Scott, which began in the early afternoon. While at the party, Appellant was seen talking to Barnett, and Tarvarious Williams, Barnett's

cousin, overheard Appellant tell Barnett that he had won the lottery and that someone was trying to hurt him. Appellant then left the party with someone who dropped him off at his friend Tom Ellis's house, and Barnett left with Tarvarious to go to the store that Barnett had recently opened. While traveling to the store, Barnett told Tarvarious that Appellant kept asking him questions about whether he was "messing around with" Appellant's girlfriend and that Appellant "made him feel weird" to the point that Barnett "didn't feel safe around him."

Barnett and Tarvarious returned to the party later that afternoon. Around 10:00 p.m., Ellis drove Appellant back to the party and waited outside in the car while Appellant went into Scott's apartment. Ten or 15 minutes later, Ellis saw Appellant come out of the apartment with Barnett, reach into his pants, pull out Ellis's .380 caliber pistol (which Appellant had taken without telling Ellis), and shoot Barnett. Appellant then ran to Ellis's car, and they drove away. As Appellant fled, partygoers who heard the gunshot ran outside and discovered Barnett shot in the right side of the neck. Barnett was taken to the hospital, where he remained in a coma until his death eight days later.

Immediately after the shooting, Ellis drove Appellant to Atlanta and

3

dropped him off near Memorial Drive. On the way, Appellant told Ellis about shooting Barnett "in the dome," and Appellant threw Ellis's gun out of the passenger side window as they approached the Oconee River.

The next day, Dubose contacted the police to report the domestic violence incident with Appellant. Dubose was instructed to come to the police station, where she made several phone calls to Appellant, who told her that he was being framed for shooting Barnett. Two days later, on May 8, Atlanta police responded to a suspicious-person call and found Appellant near Memorial Drive. The responding officer learned that Appellant had outstanding warrants from Athens-Clarke County and arrested him. Several officers noted that Appellant appeared agitated and still spoke about his lottery ticket.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega

4

v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.  Appellant's sole contention is that the trial court erred in allowing Tarvarious Williams to testify as follows:

> [Barnett] just stated to me that [Appellant] was asking him some questions about his girlfriend and saying that [Appellant] was – thought he was messing around with his girlfriend. And it made him feel weird, that he really didn't want to be around [Appellant], that he didn't know what was wrong or what was going on, that he just didn't feel safe around him. [. . .] He just felt kind of weird, kind of icky. . . .

This testimony about Barnett's statement was undisputedly hearsay; the trial court admitted it under the necessity exception to the hearsay rule. See former OCGA § 24-3-1 (b).[2]

Hearsay evidence was admissible under the necessity exception if three requirements were met: (1) the declarant was unavailable; (2) the declarant's statement was relevant to a material fact and was more probative as to that fact than other evidence that may be procured and offered; and (3) the statement

---

[2] This case was tried under Georgia's old Evidence Code. The admissibility of this type of evidence is now governed by the "residual" hearsay exception in OCGA § 24-8-807.

exhibited particularized guarantees of trustworthiness. See McNaughton v. State, 290 Ga. 894, 897-898 (725 SE2d 590) (2012). In this case, the declarant, Barnett, was clearly unavailable, as he had been killed by Appellant. See id. at 898. But Appellant asserts that the State failed to meet the second and third parts of the test. We disagree.

As to the second part, Barnett's statement was relevant to the material fact of Appellant's motive for shooting Barnett – his belief that Barnett was involved with his girlfriend, Dubose. See Rai v. State, 297 Ga. 472, 477 (775 SE2d 129) (2015). And the statement was more probative on this point than other available evidence, as it was the only evidence that provided a link between Appellant's belief that someone was plotting with Dubose to kill him and his decision to kill Barnett. There is no indication that the State could have procured other evidence on this point; the testimony at trial indicated that no witness heard the relevant portion of the conversation between Appellant and Barnett at the party.

As to the third part of the test, "[w]hether a statement is trustworthy is a matter for the trial court's discretion, and the exercise of such discretion will not be overturned absent an abuse of discretion." Gibson v. State, 290 Ga. 6, 8 (717 SE2d 447) (2011). "Trustworthiness is assessed under the totality of the

circumstances, including any motives the declarant may have had to be untruthful in making the statement . . . and the extent to which the declarant enjoyed a relationship of confidence with the witness." Rai, 297 Ga. at 472. See also Thompson v. State, 294 Ga 693, 697 (755 SE2d 713) (2014) (explaining in a case involving the testimony of the murder victim's cousin that "a statement is trustworthy where there is a showing that the deceased enjoyed a close personal relationship to the person who is testifying as to the statement"); Wright v. State, 276 Ga. 454, 458 (579 SE2d 214) (2003) ("[T]he trustworthiness of the statements is enhanced by the fact that [the declarant's] statements to the witnesses that concerned [the defendant's] behavior were made at times shortly after that behavior occurred.").

Here, Barnett's statement bore significant indicia of trustworthiness because Tarvarious testified that Barnett was his cousin for whom he had "close feelings"; Barnett had no apparent motive to fabricate the statement; Barnett made the statement to Tarvarious shortly after the conversation between Barnett and Appellant; and the statement aligned with Dubose's testimony about Appellant's paranoid allegations. Appellant points out that Tarvarious did not tell the police about this statement until more than 18 months after the murder,

when he was facing criminal charges.[3]  But that one point is not controlling.

Considering all the circumstances, the trial court did not abuse its discretion in admitting Tarvarious's testimony about Barnett's statement.

Judgment affirmed.  All the Justices concur.

---

[3]  Tarvarious testified, outside of the jury's presence, that he was currently in jail on a pending probation revocation matter, but that he had not been promised any sort of benefit for his testimony.  And while Tarvarious was interviewed by the police shortly after Barnett was shot, he was not asked questions about the events that occurred earlier that day.