**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2017**

# In the Court of Appeals of Georgia

A17A0184. RABUN v. RABUN.

REESE, Judge.

Mildred Rabun (hereinafter "the widow") appeals from an order of summary judgment in favor of her stepson, Timothy Rabun ("the executor"), in the widow's action to impose a constructive trust on assets transferred to the executor from Elwood Rabun, Sr. ("the decedent") during the decedent's lifetime. The widow also seeks review of that portion of the trial court's order that awarded certain properties in her possession to the executor. For the reasons set forth, infra, we affirm the grant of summary judgment as to the trial court's refusal to impose a constructive trust, but

reverse that portion of the order directing the return of certain personal property to the executor.[1]

Viewing the evidence in the light most favorable to the widow, as the nonmoving party,[2] the evidence shows that the decedent, the widow's husband of 17 years, died testate on April 20, 2014, after a battle with lung cancer that had lasted several years. The will which the decedent had executed in November 2012 granted a life estate in the marital residence to the widow, with the remainder to go to the executor, and devised adjacent property to the executor's siblings.[3] The will left the remainder of the decedent's estate to the executor.

Prior to the filing of the widow's complaint in the superior court, a probate court had awarded the widow as year's support[4] "all of the decedent's interest in the

---

[1] The Supreme Court's "equity jurisdiction is not invoked if the issue raised on appeal involves only whether the evidence is sufficient to authorize the imposition of an implied trust." *Robertson v. Robertson*, 333 Ga. App. 864, 867, n. 4 (778 SE2d 6) (2015) (citation omitted).

[2] See *Ansley v. Raczka-Long*, 293 Ga. 138, 140 (2) (744 SE2d 55) (2013).

[3] The executor testified in his deposition that the decedent was his biological grandfather who had adopted him when he was four or five years old. References to the executor's siblings are to the decedent's children, i.e., the executor's biological aunts and uncles.

[4] See OCGA § 53-3-1 et seq.

2

household furniture and furnishings, appliances, and all other personal property located at the marital residence." The probate court found that the widow was in poor health and was being cared for by her daughter (the decedent's stepdaughter) at the daughter's home and that, at the time the will was probated, it was questionable whether the widow would be able to return to the marital residence in which she had been devised a life estate.

The decedent and the widow had maintained a joint checking account in which the executor claimed no interest; the account balance was approximately $41,000 at the time of the decedent's death. In addition, the decedent's estate included three accounts with SunTrust Bank: (1) a joint checking account in the names of the decedent, the executor, and the widow (the "three-party account"); (2) a money market account in the names of the decedent and the executor (the "two-party account"); and (3) an individual money market account with a provision that the proceeds were payable on death to the executor (the "individual account").

The estate also included a life insurance annuity worth approximately $88,000, a $5,000 life insurance policy, and a life insurance annuity worth approximately $50,000. Each of these designated the executor as the sole beneficiary.

3

In her complaint, the widow alleged that, after she and the decedent both became ill, the decedent rewrote his will and transferred substantial assets to the executor with the intent that the executor would provide and care for the widow after the decedent's death. The widow contended that, as a result, the executor held more than $200,000 in cash and various accounts in a constructive trust for the benefit and use of the widow.

The executor moved for summary judgment, arguing that he was the sole owner of the financial assets and that the insurance policies, annuity contracts, and bank deposit documents created no legal obligation for him to care for the widow as a matter of law. The executor also sought the return of various estate items in the widow's possession that the executor contended had neither been devised to the widow nor included in the year's support.

The superior court granted summary judgment to the executor, finding that there had been no constructive trust imposed on any of the SunTrust accounts or life insurance policies and annuities. The court also directed the widow to return certain estate items, as requested in the executor's summary judgment motion.

> A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a

4

matter of law. On appeal from the grant of summary judgment, [the reviewing court] construe[s] the evidence most favorably toward the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences.[5]

We will affirm the grant of summary judgment if it is right for any reason.[6] With these guiding principles in mind, we turn now to the widow's specific claims of error.

1. The widow argues that the trial court erred in granting summary judgment in favor of the executor because factual disputes remained as to the existence of a constructive trust.

"A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."[7]

The record on appeal includes the deposition of the widow's daughter, Janet Bennier. Bennier testified that, in 2010, after the widow suffered a second stroke and

---

[5] *Ansley*, 293 Ga. at 140 (2) (citations omitted).

[6] *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 40 (514 SE2d 843) (1999).

[7] OCGA § 53-12-132 (a). See also *Aetna Life Ins. Co. v. Weekes*, 241 Ga. 169, 172 (1) (244 SE2d 46) (1978) (applying former Ga. Code Ann. §§ 108-106, 108-107).

was in failing health, the decedent came to visit Bennier in West Virginia, where she was then living. According to Bennier, the decedent told her that the executor would take care of the widow because the executor lived closer to the widow than did Bennier or her children. The decedent added that he had taken "care of everything" and that the decedent's money "would be in [the executor's] name . . . where he would have the funds to take care of [the widow]."

The two revisited the conversation after the decedent discovered his cancer had returned. "[W]e were talking about it because I was taking him for his last . . . radiation treatments and all, and . . . I said, [']Papa, are you sure about [the executor]?['] He said [']yes, sister. Don't worry. . . . [T]he money is there. . . . There's more than enough money to take care of her in her lifetime.[']" The decedent told Bennier that he and the widow had talked to the executor and "explained everything" and that the executor had "assured" the decedent that he was going to take care of the widow.

The record also contains the deposition of Ernest Martin, a longtime, close friend of the decedent. Shortly after the decedent found out he had cancer, Martin asked him if he had his "affairs straight." The decedent responded that he had a will and that the Appellee was the executor. The decedent added that he and the executor

6

had a long conversation in which "[the executor had] assured [him] that [the widow] would be taken care of." Although the decedent did not go into specifics, he said the widow would stay in the house and that there was enough money to take care of her.

The executor argues on appeal that the decedent's statements to Bennier and Martin constituted inadmissible hearsay that lacked any probative value. In her reply brief, the widow contends that the testimony fell within the hearsay exception of OCGA § 24-8-807, because the decedent was unavailable as a witness and the close relationships between the decedent and the witnesses demonstrated sufficient guarantees of trustworthiness to warrant admission of the statements. Although not specifically noted in the summary judgment order,[8] the trial court's finding that no genuine issue of material fact existed implies that the court did not consider this hearsay testimony in reaching the judgment. We find that the trial court did not abuse its discretion[9] in not considering this hearsay evidence.[10]

_____

[8] The record on appeal does not contain a transcript of the summary judgment hearing. In her notice of appeal, the widow stated that the "[t]ranscript of evidence and proceedings [would] not be filed for inclusion in the record on appeal[,]" and the clerk of the trial court certified that the record forwarded to this Court was a complete copy of those portions of the record directed to be transmitted to this Court pursuant to the Notice of Appeal.

[9] See *Maloof v. MARTA*, 330 Ga. App. 763, 765 (1) (769 SE2d 174) (2015) ("This Court will not disturb a trial court's ruling on whether to admit evidence as an

7

OCGA § 24-8-804 (b) provides certain exceptions to the hearsay rule if the declarant is unavailable as a witness. "'[U]navailable as a witness' includes situations in which the declarant . . . [i]s unable to be present or to testify at the hearing because of death[.]"[11] The widow does not argue that any of the specific exceptions of § 24-8-804 (b) apply, but contends that the hearsay evidence was admissible under the "residual" exception.[12] The "residual" hearsay exception of the new Evidence Code, OCGA § 24-8-807, provides in part:

exception to the hearsay rule absent an abuse of discretion.") (citation omitted).

[10] See *Yetman v. Walsh*, 282 Ga. App. 499, 500 (1) (639 SE2d 491) (2006) ("The burden is upon the party assigning error to show it affirmatively by the record. Where no transcript is included in the record on appeal, we must assume that the evidence was sufficient to support the judgment.") (citations and punctuation omitted).

[11] OCGA § 24-8-804 (a) (4).

[12] To the extent the widow argues that the statements were admissible under the "necessity" exception, she improperly relies on decisions that applied the former Evidence Code. "Under Georgia's former Evidence Code, for a statement to be admissible under the necessity exception to the rule against hearsay, its proponent must show a necessity for the evidence, a circumstantial guaranty of the statement's trustworthiness, and that the hearsay statements are more probative and revealing than other available evidence." *Hornbuckle v. State*, 300 Ga. 750, 758 (6) (b) (797 SE2d 113) (2017) (citations and punctuation omitted). Because the hearing on the executor's motion for summary judgment took place after January 1, 2013, however, the provisions of Georgia's new Evidence Code apply. See Ga. L. 2011, pp. 99, 214, § 101.

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:

(1) The statement is offered as evidence of a material fact;

(2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.[13]

Rule 807 was intended to be used only rarely, and was not intended to provide a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 803 and 804 (b).[14] In order for hearsay

---

[13] Because OCGA § 24-8-807 mirrors Fed. R. Evid. 807, we will look to case law from federal courts within the Eleventh Circuit for guidance in interpreting that statute. See *Maloof*, 330 Ga. App. at 765, (1) (a), n. 3 (regarding Rule 803); see also Fed. R. Evid. 807 (a) ("Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.").

[14] See *United States v. Mathis*, 559 F2d 294, 299 (5th Cir. 1977) (quoting the legislative history to former Federal Rule of Evidence 803 (24), which was transferred to Rule 807); see also *Bonner v. City of Prichard, Alabama*, 661 F2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit handed down on or before September 30, 1981).

evidence to be admitted under Rule 807, there must be "circumstances evidencing a clear basis of trustworthiness" to support the out-of-court statement.[15] Otherwise, "exceptions to the rule against hearsay could swallow the rule."[16] "[T]he burden is on the party seeking to invoke the residual exception to clearly demonstrate the existence of the requisite guarantees of trustworthiness."[17]

Particularly in the absence of a hearing transcript, the widow has not shown that the trial court abused its discretion in refusing to admit the vague hearsay testimony of Bennier and Martin.[18] It necessarily follows that, without the hearsay evidence detailed above, no genuine issue of material fact existed, and summary judgment was proper.[19]

---

[15] *Nat. Labor Relations Bd. v. United Sanitation Svc.*, 737 F2d 936, 941 (11th Cir. 1984) (applying former Federal Rule of Evidence 804 (b) (5)) (citation and punctuation omitted).

[16] Id. (citation and punctuation omitted).

[17] Id. (citation omitted).

[18] See *Herzog v. Castle Rock Entertainment*, 193 F3d 1241, 1254-1255 (B) (1) (11th Cir. 1999) (affirming decision to exclude hearsay testimony under Federal Rule of Evidence 807 because there was no way "to verify the accuracy of the testimony or of the out-of-court statements that the testimony report[ed], and the reliability of the testimony c[ould] not be taken for granted") (citation omitted).

[19] See *Urban v. Lemley*, 232 Ga. App. 259, 260-261 (1) (501 SE2d 529) (1998).

2. The widow argues that the trial court clearly erred in awarding certain estate items to the executor.

The widow admitted in her deposition that she had possession of various items of personal property that were sought by the executor. The record is unclear, however, as to whether these items had been taken from the marital residence and, thus, were included in the award of year's support. Construing the evidence in the light most favorable to the widow, we find that a genuine issue of material fact existed as to whether these items were included in the year's support awarded to the widow. Consequently, the trial court erred in granting summary judgment to the executor on that claim.

*Judgment affirmed in part and reversed in part. Doyle, C. J., and Miller, P. J., concur.*