NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0685
Jerry Hodges
v.
The State

On Appeal from the Fulton County Superior Court
No. 19SC166924

Decided: May 19, 2026

PETERSON, Chief Justice.

Jerry Hodges appeals his convictions related to the shooting death of Malik Barry-Buchanan.[1] On appeal, Hodges

---

[1] Barry-Buchanan was killed on March 16, 2007. In April 2019, a Fulton County grand jury returned an indictment charging Hodges with malice murder (Count 1), three counts of felony murder (Counts 2–4), armed robbery (Count 5), burglary (Count 6), aggravated assault (Count 7), and possession of a firearm during the commission of a felony (Count 8). At a jury trial in August 2022, the jury found Hodges guilty of all charges. The trial court sentenced Hodges to serve life in prison on Count 1, a consecutive twenty-year sentence on Count 5, a concurrent twenty-year sentence on Count 6, and a consecutive five-year sentence on Count 8. The remaining counts were either vacated by operation of law or merged for sentencing purposes. In August 2022, Hodges timely filed a motion for new trial, which he amended, and the trial court initially denied it an order entered on November 22, 2024. That same day, motion-for-new-trial counsel filed a motion to withdraw, saying that his employment with the Georgia Public Defender Council was ending, but no order permitting that withdrawal was entered, and no notice of appearance or timely notice of appeal was filed until February 2025, when appellate counsel filed a notice of appearance. The trial court entered a new order in October

argues that the trial court abused its discretion by admitting video evidence from a police body camera showing him fleeing when he was pulled over, arguing that the video was substantially more unfairly prejudicial than probative under OCGA § 24-4-403 ("Rule 403"). Hodges also argues that his trial counsel was ineffective for failing to object on the ground that the State failed to provide proper notice of its intention to introduce evidence of flight that, he alleges, constituted other-acts evidence under OCGA § 24-4-404(b) ("Rule 404(b)").

The trial court did not abuse its discretion in admitting the video footage, which it limited to a ten-second clip that showed only Hodges's face after he was arrested and was relevant to establish his identity as the person arrested by police. And because the evidence of flight was intrinsic evidence, the State was not obligated to provide notice, and so trial counsel was not deficient for failing to object to the lack of notice. We affirm.

Viewing the facts in the light most favorable to the jury's verdicts, the trial evidence showed the following. In March 2007, Christen Canada was dating Barry-Buchanan. On the night of March 16, Canada went to the two-level apartment in Fulton County where Barry-Buchanan lived with roommates Xavier Stanford and Corey Gooden. Canada parked her car approximately 20 feet from the townhouse door and could clearly see the entrance, as the parking lot was well lit. Because there had been recent break-ins, Barry-Buchanan had instructed Canada to call him when she arrived so that he could escort her inside the apartment. Canada called him several times, but Barry-Buchanan did not pick up. As Canada waited, Gooden

_____

2025, vacating its prior order and again denying his motion for new trial. Hodges timely filed a notice of appeal, and his appeal was docketed to this Court's April 2026 term and submitted for a decision on the briefs.

pulled up in Barry-Buchanan's car and parked nearby. Canada remained in her car but watched Gooden exit the vehicle, walk to the apartment, and approach it slowly as he got close.

Gooden testified that as he opened the door, he saw Barry-Buchanan sitting on a sofa, making hand signals and eye gestures to him. Gooden also heard voices coming from upstairs. From behind the door, a male extended his arm pointing a gun and ordered Gooden not to move. Gooden struck the door to knock the gun away, saw the gun fall, and immediately fled.

After Gooden ran, Canada observed two "teenage boys" run out of the front door carrying clothes. Barry-Buchanan tried to leave the apartment, bumping into another "boy" along the way. Canada then began to pull her car out and unlocked the doors so Barry-Buchanan could get inside. Barry-Buchanan began to jog to Canada's car, stopped, and turned to look at the "boy," who was between 13 and 16 years old and was carrying some clothes. Barry-Buchanan and the teenager stared at each other for about 10 seconds before the teenager pulled out a gun and shot Barry-Buchanan in the chest. Barry-Buchanan put his hand to his chest, attempted to run, and collapsed.

Canada placed her car in park, got out, and ran to Barry-Buchanan. She called 911 and attempted lifesaving measures until emergency responders arrived. Canada did not see where the shooter went. Barry-Buchanan was taken to a hospital where he was pronounced dead from a gunshot wound to the chest.

Police lifted a fingerprint from a window screen that had been removed to access the apartment. Police were unable to match the fingerprint to anyone, even after running it through a national database, and developed no suspects, causing the investigation to become inactive.

In December 2018, police ran the fingerprint through the national database again, and the search returned a match to Hodges. Police attempted to locate Hodges at his mother's residence. A detective left his business card at the door when no one answered and spoke to her soon after. Police then compiled a photo lineup using a photograph of Hodges that was age-appropriate from around the time of the crimes. Canada positively identified Hodges as the shooter during a photo lineup.

After an arrest warrant was issued, a police officer conducted a traffic stop on a vehicle in which Hodges was a passenger. In identifying himself to the officer, Hodges used his brother's name. When the officer determined that the information provided did not match the police database, the officer learned Hodges's true identity and learned that Hodges had an active warrant. When Hodges heard that he was going to be arrested, he fled the traffic stop on foot but was quickly apprehended after being tased. The arrest and foot chase was recorded on the officer's body camera, and a portion of that recording was played for the jury. Canada positively identified Hodges as the shooter at his 2022 trial. The trial court did not abuse its discretion in refusing to exclude body-cam footage under Rule 403.

Hodges argues that the trial court abused its discretion in admitting video evidence of Hodges's flight because the evidence was too unfairly prejudicial under Rule 403. We disagree.

Under Rule 403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"

> We have explained that there is no mechanical solution for this balancing test, and that in each case, a trial court must undertake a considered evaluation of the proffered justification for the

4

admission of such evidence and make an independent determination of whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact. Decisions regarding relevance are committed to the sound discretion of the trial court, and the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly.

*Thomas v. State*, 310 Ga. 579, 582–83 (2020) (cleaned up).

In the middle of the arresting officer's testimony, the State moved to admit into evidence body-camera footage of Hodges's arrest, indicating an intention to play only a portion of it. The trial court admitted the exhibit over Hodges's relevance and bolstering objections. When the arresting officer, Officer Holland, could not identify Hodges at trial as the person he arrested, the State began to play the body-camera footage, and Hodges objected again, stating that the audio portion raised "more issues," in particular "[h]earsay" and "character," and that the video portion was not relevant and was "403 character evidence." The trial court found that the circumstances surrounding an arrest, including flight, are generally admissible if relevant to the crime charged, but noted that there was an "[o]pen question" as to whether parts of the recording were "going to be a 403 or a relevance" given that the arrest occurred years after the crimes. The State responded that the recording was relevant to show that Hodges ran because he knew the police were possibly looking for him for the murder investigation, but also to show that Hodges

was the person Officer Holland arrested since Officer Holland could not identify Hodges at trial. Hodges argued in response that "[i]f the State wants to use the last little picture of his face to make that connection I think that is relevant since [Officer Holland] could not identify the person that he arrested in court, but I think the rest does not meet the 403 [test]."

Upon considering the parties' arguments and reviewing the video footage, the trial court ruled that the State could play two limited portions of the video to show that it was Hodges who was arrested, but that the rest of it, including portions showing Hodges's flight and tasing, could not be played because the footage was not very probative and would be cumulative of the testimony Officer Holland would likely give regarding the foot chase and arrest. After Officer Holland described the foot chase, including having to tase Hodges, the State played a ten-second clip of the encounter that showed Hodges's face as he laid on the ground after being chased, and Officer Holland confirmed that the person in the video was the person he arrested.

Hodges argues that the trial court abused its discretion in allowing the body-cam footage to be played for the jury, because it was not necessary for the jury to compare the face of the person arrested with Hodges's face, especially since he was not arrested at the scene of the crime and his presence at the traffic stop was not relevant or material to any issues in the case. But at trial, Hodges acknowledged that showing a limited portion of the video was relevant for the purpose of establishing identification since Officer Holland could not identify the person he arrested in court.

Although Hodges preferred to admit only a still photo of his face, rather than a video-clip, the record shows that only one segment was played for the jury, and that segment essentially shows only his face and does not include any of the potentially

problematic matters identified by the court.[2] Hodges does not explain how this limited segment was unfairly prejudicial, especially when Officer Holland testified about the circumstances of the chase that the trial court had excluded from being shown to the jury. Under these circumstances, we cannot say that the trial court abused its discretion in refusing to exclude the limited body-cam footage under Rule 403.

1. *Trial counsel was not deficient for failing to object to the introduction of his flight from a police officer.*

Hodges next argues that trial counsel was ineffective for failing to object to the admission of evidence of his flight from the arresting police officer on the ground that the State failed to provide notice under Rule 404(b). Because this evidence was properly considered intrinsic evidence, Rule 404(b) did not apply, no notice was required, and Hodges's claim fails.

To prevail on his claim, Hodges must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 US 668, 687 (1984). To establish deficient performance, Hodges "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*,

---

[2] Hodges makes no record showing that anything other than this 10-second clip was shown to the jury. See *Hornbuckle v. State*, 300 Ga. 750, 753 (2017) ("The appellant bears the burden of proving error by the appellate record." (quotation marks omitted)). The jury does not appear to have had the ability to replay this recording for itself during deliberations, because in its instructions to the jury, the trial court told the jury that it would be allowed to see the video footage again if it asked. The record does not show that the jury made any such request.

304 Ga. 851, 855 (2019) (quotation marks omitted). Our inquiry focuses on the objective reasonableness of counsel's performance, not counsel's subjective state of mind. See *Bozzie v. State*, 302 Ga. 704, 714 (2017). To demonstrate prejudice, Hodges must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mims*, 304 Ga. at 855 (quotation marks omitted). The failure to meet either of the prongs is fatal to an ineffectiveness claim. See *Smith v. State*, 296 Ga. 731, 733 (2015). In considering an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. *Lawrence v. State*, 286 Ga. 533, 534 (2010).

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." OCGA § 24-4-404(b). But generally, evidence of flight is intrinsic evidence that is not subject to Rule 404(b). See *Jenkins v. State*, 313 Ga. 81, 88–89 (2022). See also *Williams v. State*, 302 Ga. 474, 485 ("The limitations and prohibition on other acts evidence set out in [Rule 404(b)] do not apply to intrinsic evidence." (cleaned up)). Hodges concedes as much but argues that the trial court erred in determining that his evidence of flight indicated a consciousness of guilt, because there was no evidence he was aware he was under investigation. See *Jenkins*, 313 Ga. at 89 ("[I]nterpretations of an act of flight should be made cautiously and with a sensitivity to the facts of a particular case, including whether the defendant was aware that he was under investigation or had other reasons to flee and the timing of the flight." (quotation marks omitted)). Hodges argues that there is an absence of evidence of his awareness because, when the detective visited his mother's house after the detective learned

that the fingerprint left at the crime scene was a match to Hodges, the detective left only a business card and had no conversation with Hodges or his mother. But Hodges's claim is belied by the record. Although the detective testified that he did not speak to Hodges's mother the first time he visited, he testified that he did talk to her later (but still before Hodges's arrest). The substance of this conversation was not discussed at trial, but it was reasonable to infer, as the trial court did, that Hodges had become aware the police were looking for him. Thus, his flight was evidence of his consciousness of guilt, not subject to Rule 404(b), and any objection on Rule 404(b) grounds for lack of notice would have failed. Accordingly, trial counsel was not deficient for failing to make a meritless objection, so this claim fails. See *Sims v. State*, 321 Ga. 627, 635 (2025).

*Judgment affirmed. All the Justices concur, except Warren, P.J., not participating.*